## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT ROSENTHAL, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Case No. 1:22-CV-11944-NMG |
| v. | |
| BLOOMINGDALE'S INC., | |
| Defendant. | |

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ............................................................................................................ 3

I.      BLOOMINGDALES.COM IS NOT SUBJECT TO PERSONAL
JURISDICTION IN MASSACHUSETTS. ....................................................... 3

      A.      The Complaint Fails To Plead that Plaintiff's Claims Arise Out of or
Relate to Bloomingdale's Forum Contacts. ............................................ 4

      B.      The Complaint Also Fails To Plead Purposeful Availment.................................. 7

II.      PLAINTIFF FAILS TO STATE A CLAIM. ..................................................... 8

      A.      The Massachusetts Wiretap Act Claim Should Be Dismissed. ............................ 9

            1.      No Interception Occurred in Massachusetts. ............................. 9

            2.      No Interception Occurred As a Matter of Law. ....................... 10

      B.      The Invasion of Privacy Claim Should Be Dismissed......................................... 15

CONCLUSION......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Corp. v. All Am. Plumbing, Inc.*,
812 F.3d 54 (1st Cir. 2016)...................................................................................8

*Adorno v. Crowley Towing & Transp. Co.*,
443 F.3d 122 (1st Cir. 2006) ...............................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................8, 10

*Axford v. TGM Andover Park, LLC*,
2021 WL 681953 (D. Mass. Feb. 22, 2021) ..................................................17, 18

*Ayash v. Dana-Farber Cancer Inst.*,
822 N.E.2d 667 (Mass. 2005) .............................................................................16

*BFT Advisors, LLC v. Long*,
2022 WL 1912871 (D. Mass. June 3, 2022)..........................................................5

*Birbiglia v. St. Vincent Hosp.*,
1994 WL 878836 (Mass. Super. Dec. 29, 1994) .................................................11

*Branyan v. Sw. Airlines Co.*,
105 F. Supp. 3d 120 (D. Mass. 2015) ..................................................................16

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
137 S. Ct. 1773 (2017).......................................................................................4, 6

*Cardoso v. Whirlpool Corp.*,
2021 WL 2820822 (S.D. Fla. July 6, 2021)........................................................15

*Casey v. United Parcel Serv., Inc.*,
2022 WL 2834258 (D. Mass. July 20, 2022).......................................................16

*Chase v. First Par. Church*,
2000 WL 281663 (Mass. Super. Feb. 3, 2000).....................................................17

*Chen v. United States Sports Acad., Inc.*,
956 F.3d 45 (1st Cir. 2020)....................................................................................3

*Chiocca v. Town of Rockland*,
2022 WL 4817094 (D. Mass. Oct. 3, 2022).........................................................16

*Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*,
   228 F.3d 24 (1st Cir. 2000) ................................................................................12

*Cloutier v. City of Lowell*,
   2017 WL 11488633 (D. Mass. July 12, 2017) ...............................................17, 18

*Commonwealth v. Camilli*,
   965 N.E.2d 226 (Mass. Ct. App. 2012) ............................................................13

*Commonwealth v. Connolly*,
   913 N.E.2d 356 (Mass. 2009) ...........................................................................13

*Commonwealth v. Gordon*,
   666 N.E.2d 122 (Mass. 1996) ...........................................................................13

*Commonwealth v. Maccini*,
   2007 WL 1203560 (Mass. Super. Apr. 23, 2007) ..........................................9, 12

*Commonwealth v. Proetto*,
   771 A.2d 823 (2001) .........................................................................................12

*Commonwealth v. Rivera*,
   833 N.E.2d 1113 (Mass. 2005) .........................................................................13

*Commonwealth v. Rock*,
   2013 WL 2371410 (Mass. Ct. App. 2013) ........................................................13

*Commonwealth v. Wilcox*,
   823 N.E.2d 808 (Mass. App. 2005) ....................................................................9

*Connor v. Whirlpool Corp.*,
   2021 WL 3076477 (S.D. Fla. July 6, 2021) ......................................................15

*Curtatone v. Barstool Sports, Inc.*,
   169 N.E.3d 480 (Mass. 2021) .................................................................11, 13, 14

*Dirico v. MBNA Am. Bank, N.A.*,
   2009 WL 16736, at *1 (Mass. App. Ct. Jan. 5, 2009) .........................................17

*French v. United Parcel Serv., Inc.*,
   2 F. Supp. 2d 128 (D. Mass. 1998) ...................................................................16

*Garcia v. Enter. Holdings, Inc.*,
   78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...............................................................12

*Glik v. Cunniffe*,
   655 F.3d 78 (1st Cir. 2011) ...............................................................................11

*Goldstein v. Costco Wholesale Corp.*,
   559 F. Supp. 3d 1318 (S.D. Fla. 2021) ...............................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)...........................................................................8

*Haley v. City of Bos.*,
   657 F.3d 39 (1st Cir. 2011)...................................................................9

*Harlow v. Children's Hosp.*,
   432 F.3d 50 (1st Cir. 2005)...................................................................8

*Jacome v. Spirit Airlines Inc.*,
   2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ..................................15

*Kelley v. CVS Pharmacy, Inc.*,
   2007 WL 2781163 (Mass. Super. Aug. 24, 2007) ................................17

*Lin v. TipRanks, Ltd.*,
   19 F.4th 28 (1st Cir. 2021).....................................................................6

*Little Kids, Inc. v. 18th Ave. Toys, Ltd.*,
   2020 WL 7264267 (D.R.I. Dec. 10, 2020) ...........................................6

*MacNeill Eng'g Co. v. Trisport, Ltd.*,
   59 F. Supp. 2d 199 (D. Mass. 1999) ...................................................10

*Marquis v. Google, Inc.*,
   2015 WL 13037257 (Mass. Super. Feb. 13, 2015).................................9

*Mason v. Mach. Zone, Inc.*,
   140 F. Supp. 3d 457 (D. Md. 2015) ....................................................14

*Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*,
   142 F.3d 26 (1st Cir. 1998)...................................................................6

*Massie v. Gen. Motors Co.*,
   2021 WL 2142728 (E.D. Cal. May 26, 2021) ...........................1, 4, 5, 6

*Motus, LLC v. CarData Consultants, Inc.*,
   23 F.4th 115 (1st Cir. 2022)........................................................3, 4, 7, 8

*Philbrook v. Perrigo*,
   637 F. Supp. 2d 48 (D. Mass. 2009) ...................................................16

*Popa v. Harriet Carter Gifts, Inc.*,
   426 F. Supp. 3d 108 (W.D. Pa. 2019)..................................................18

*Portnoy v. Insider, Inc.*,
    2022 WL 16748583 (D. Mass. Nov. 7, 2022) .......................................................15

*Potter v. Havlicek*,
    2008 WL 2556723 (S.D. Ohio June 23, 2008) ...................................................15

*PREP Tours, Inc. v. Am. Youth Soccer Org.*,
    913 F.3d 11 (1st Cir. 2019)..................................................................................7

*Rodriguez v. Samsung Elecs. Co. Ltd.*,
    827 F. Supp. 2d 47 (D. Mass. 2011) ...................................................................6

*Sacco v. Mouseflow, Inc.*,
    2022 WL 4663361 (E.D. Cal. Sept. 30, 2022).....................................................7

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    567 N.E.2d 912 (Mass. 1991) ............................................................................17

*Spencer v. Roche*,
    659 F.3d 142 (1st Cir. 2011) ..............................................................................15

*Squeri v. Mount Ida Coll.*,
    954 F.3d 56 (1st Cir. 2020)................................................................................16

*United States v. Ackies*,
    918 F.3d 190 (1st Cir. 2019) ..............................................................................15

*Vapotherm, Inc. v. Santiago*,
    38 F.4th 252 (1st Cir. 2022)................................................................................6

*Walden v. Fiore*,
    571 U.S. 277 (2014)........................................................................................5, 8

**Statutes**

Mass. Gen. Laws ch. 214, § 1B .................................................................................15

Mass. Gen. Laws ch. 272, § 99 .................................................................9, 11, 12, 13, 14

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)......................................................................15

## INTRODUCTION

This lawsuit is one of many copycat lawsuits challenging the use of "session replay" software that helps companies improve the user experience on their websites. One company using this routine software service is Bloomingdales.com ("Bloomingdale's"), a New York-based retailer. Plaintiff claims the use of this service constitutes "wiretapping" under Massachusetts law, as well as an invasion of privacy. For multiple reasons, the Court should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) or (b)(6).

*First*, the Court has no personal jurisdiction over Bloomingdale's. Nowhere does Plaintiff plead facts showing a connection between his claims and any Bloomingdale's contacts in Massachusetts. Nor could he, because Plaintiff's claims relate to conduct *outside* of Massachusetts: Bloomingdale's procurement and installation of session replay software on its nationally accessible website operated from New York, where Bloomingdale's principal place of business is located. For similar reasons, a court dismissed a website operator for lack of personal jurisdiction in a wiretapping lawsuit filed in California. *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *6 (E.D. Cal. May 26, 2021). The same result is warranted here.

*Second*, the Complaint fails to state a viable claim under the Massachusetts Wiretap Act. As a threshold matter, the Act does not apply extraterritorially, and there are no factual allegations that Plaintiff's online interactions with Bloomingdale's website were received and recorded *in* Massachusetts. Plaintiff also fails to allege the requirements for stating an "interception" under the statute. As an initial matter, Plaintiff's interactions on Bloomingdale's website were not followed "secretly," because Bloomingdale's privacy policy discloses such data practices on its website. Further, Plaintiff's interactions with the website are also not "communications," which Massachusetts courts have interpreted as meaning "conversations," not the mouse clicks and

keystrokes alleged here.  Finally, Plaintiff fails to allege use of an "intercepting device," which refers to tangible equipment, not intangible software.

*Third*, Plaintiff also fails to state a claim for invasion of privacy, because the visitor activity Bloomingdale's allegedly collected on its own website does not rise to the level of "highly personal or intimate" facts required to state such a claim.  Plaintiff does not even plead what he specifically did on Bloomingdale's website when he visited.

For these and additional reasons set forth below, this Court should dismiss the Complaint.

## BACKGROUND[1]

***Bloomingdales.com's Alleged Use of Session Replay Software.***  Bloomingdales.com, LLC,[2] a New York-based company, uses "[s]ession [r]eplay" software code on its website to help improve the design and user experience on its website.  Compl. ¶¶ 1, 6, 13.  The software code was "procure[d]" from session replay vendors[3] and installed on the webpages of Bloomingdale's website.  *Id.* ¶¶ 1, 4.  During a user's visit to Bloomingdale's website, the software code allegedly collects information about a visitor's navigation of the website (*e.g.*, mouse clicks, keystrokes).  *Id.* ¶¶ 1, 26, 40, 47.  The software allows Bloomingdale's to "recreate" the user's visit to the website, which provides Bloomingdale's "with insights into the user experience."  *Id.* ¶ 23.  This feature is known as "[s]ession [r]eplay."  *Id.*

***Plaintiff's Alleged Visits to Bloomingdales.com's Website.***  Plaintiff Scott Rosenthal is a Massachusetts resident who alleges that he visited Bloomingdale's website "approximately once

---

[1] Citations to the Complaint in this memorandum should not be construed as acceptance by Bloomingdale's of the truth of the allegations in the Complaint.

[2] Plaintiff improperly named Bloomingdale's, Inc. as a defendant, even though that entity no longer exists.  For purposes of this motion, it is assumed the proper defendant Bloomingdales.com, LLC, has been named.

[3] The only vendor that Plaintiff identifies is a company called FullStory.  Compl. ¶¶ 1, 41.

or twice a month" for an unspecified period. *Id.* ¶¶ 5, 45.  Plaintiff alleges that the "[s]ession [r]eplay" software code installed on Bloomingdale's website "captured" information about his movements on the website—including his "mouse movements," "clicks," "keystrokes," and "URLs of web pages visited"—and purportedly "sent" that information to session replay vendors acting "at Bloomingdale's request." *Id.* ¶¶ 1, 26, 40, 48, 53.

***This Lawsuit.***  In November 2022, Plaintiff filed this putative class action alleging that Bloomingdale's alleged collection and use of information about his movements on its website constitute unlawful "wiretapping" of his "communications." *Id.* ¶ 1, 80.  He asserts that this conduct violated the Massachusetts Wiretap Act (*id.* ¶¶ 66–85) and constitutes an invasion of privacy under Massachusetts law (*id.* ¶¶ 86–100).  Plaintiff seeks to assert these claims on behalf of a putative class of persons in Massachusetts "whose Website Communications were captured in Massachusetts through the use of Session Replay Code" on the Bloomingdale's website. *Id.* ¶ 57.

## ARGUMENT

## I.   BLOOMINGDALES.COM IS NOT SUBJECT TO PERSONAL JURISDICTION IN MASSACHUSETTS.

Plaintiff bears the burden of establishing personal jurisdiction. *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 121 (1st Cir. 2022).  Where, as here, the Court is sitting in diversity, the Court may exercise personal jurisdiction over a defendant only if it comports with the "strictures of the Due Process Clause." *Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 54 (1st Cir. 2020).[4]

---

[4] Because Plaintiff fails to satisfy the due process requirement, the Court need not separately address whether personal jurisdiction is authorized by Massachusetts' long-arm statute. *Chen*, 956 F.3d  at 54, 62 (taking same approach in affirming dismissal for lack of personal jurisdiction).

Plaintiff does not and cannot allege that Bloomingdale's is subject to general jurisdiction in Massachusetts.[5]  Only specific jurisdiction is pleaded.  Compl. ¶ 9.  For specific jurisdiction to attach, Plaintiff must show that (1) his claims "directly arise from or relate to" Bloomingdale's contacts with Massachusetts, (2) any such suit-related contacts "represent a purposeful availment of the privilege of conducting activities in that state," and (3) the exercise of jurisdiction is "reasonable under the circumstances."  *Motus*, 23 F.4th at 122 (internal quotation marks and citation omitted).  For the reasons explained below, there is no specific jurisdiction over Bloomingdale's in this case.

### A.    The Complaint Fails To Plead that Plaintiff's Claims Arise Out of or Relate to Bloomingdale's Forum Contacts.

Plaintiff fails to plead facts demonstrating that his claims arise out of or relate to Bloomingdale's contacts with the forum.  This requires specific factual allegations of "a connection between the forum and the specific claims at issue"—"unconnected activities" will not support specific jurisdiction.  *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017).

In another session replay case, the court dismissed a complaint filed against a website operator for lack of personal jurisdiction for similar reasons.  *Massie*, 2021 WL 2142728, at *6.  In *Massie*, as here, the plaintiff alleged that a website operator (GM) had procured a session replay vendor to "[w]iretap" communications with visitors to its nationally accessible website.  *Id.* at *1.  The *Massie* court held that there was no personal jurisdiction over GM, because the plaintiff's claims "arise from and relate to" conduct *outside* the forum: "enter[ing] a license agreement with

---

[5] Bloomingdale's is not subject to general jurisdiction because it is an Ohio limited liability company with its principal place of business in New York.  *See*  ECF No. 21 (corporate disclosure statement).

a non-California vendor" to provide session replay software, and using that software "on a nationally accessible website that is operated from Michigan," where GM's principal place of business is located. *Id.* at *6. It made no difference that GM "seeks to serve the market for automobiles in California" through its website, because "the sales of those automobiles . . . are not related to this suit." *Id.*

Plaintiff's Complaint fares no better. Plaintiff pleads no facts showing a connection between his specific claims and any Bloomingdale's contacts in Massachusetts. Rather, his claims relate to conduct *outside* of Massachusetts: the alleged "procurement" of session replay software from a Georgia-based vendor (FullStory[6]) and "use of" that software on a nationally accessible website (bloomingdales.com) operated from New York, where Bloomingdale's principal place of business is located. *See* Compl. ¶¶ 4, 6, 39–41.[7] Whether the software was allegedly used to collect data "from website visit sessions initiated by citizens of Massachusetts" (Compl. ¶ 9) is irrelevant because the only jurisdictionally relevant contacts are those "that the defendant *himself* creates with the forum state," not contacts initiated by forum residents. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

At bottom, Plaintiff is alleging "tortious" conduct outside Massachusetts that allegedly affected persons in the state. *See* Compl. ¶ 9. "The cases establish," however, "that in-state injury alone is not sufficient under the Due Process Clause to prove relatedness for tort claims."

---

[6] This Court may take judicial notice that FullStory is incorporated in Delaware with its principal place of business in Georgia, as reflected in Exhibit 1, because "such information is readily and publicly available" on the Georgia Secretary of State's website. *BFT Advisors, LLC v. Long*, 2022 WL 1912871, at *3 n.3 (D. Mass. June 3, 2022) (taking judicial notice of state of incorporation disclosed in filing with Massachusetts Secretary of State); *see* Georgia Secretary of State, Business Search, https://ecorp.sos.ga.gov/BusinessSearch/BusinessInformation?businessId=1741233&businessType=Foreign%20Profit%20Corporation&fromSearch=True.

[7] Although the Complaint also refers generically to "various" other vendors (Compl. ¶ 44), there are no allegations that those unspecified vendors reside in Massachusetts.

*Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 261 (1st Cir. 2022) (no relatedness where injury in New Hampshire related to conduct emanating from Florida and Georgia).  First Circuit law on this point is clear: "We have wrestled before with this issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative." *Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 36 (1st Cir. 1998); *accord Rodriguez v. Samsung Elecs. Co. Ltd.*, 827 F. Supp. 2d 47, 52 (D. Mass. 2011) (Gorton, J.) (no relatedness where injury in Massachusetts related to conduct originating in Korea); *see also Bristol-Myers*, 137 S. Ct. at 1782 (no relatedness where "all the conduct giving rise to [plaintiffs'] claims occurred elsewhere").

It also makes no difference that Bloomingdale's engages in the "marketing and selling [of] goods in Massachusetts."  Compl. ¶ 9 (alleging that Plaintiff's claims "arise from" such activity).  Where, as here, a plaintiff's claims sound in tort, the plaintiff must show that "the defendant's *in-state conduct* gave birth to the cause[s] of action."  *Lin v. TipRanks, Ltd.*, 19 F.4th 28, 35 (1st Cir. 2021) (emphasis added).  Plaintiff does not allege that he made any purchase on Bloomingdale's website.  He thus cannot plausibly allege that any marketing or sales in Massachusetts gave birth to his claims.  *Massie*, 2021 WL 2142728, at *6 (no relatedness between website operator's marketing and sales in California and wiretap claim premised on use of session replay software because such a claim has "nothing to do with GM's sales"); *see also, e.g.*, *Little Kids, Inc. v. 18th Ave. Toys, Ltd.*, 2020 WL 7264267, at *8 (D.R.I. Dec. 10, 2020) (no relatedness between "online advertising and sales contacts" in forum and trademark infringement claims, because there were no sales of the infringing product in the forum).

In sum, because Plaintiff has not pleaded that his claims arise out of or relate to any Bloomingdale's contacts *in the forum*, his action should be dismissed for lack of specific jurisdiction.

**B.    The Complaint Also Fails To Plead Purposeful Availment.**

Plaintiff also alleges no facts plausibly showing purposeful availment, a second requirement of specific jurisdiction. *Motus*, 23 F.4th at 122. To establish purposeful availment, a plaintiff must show that the defendant's suit-related conduct was "deliberately target[ed]" toward Massachusetts. *PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 19 (1st Cir. 2019).

The Complaint does not plead facts showing that Bloomingdale's alleged conduct—procurement and use of session replay software on Bloomingdale's website (Compl. ¶ 1)—deliberately targets Massachusetts. Bloomingdale's only alleged connection to Massachusetts is through its website, which is accessible nationwide. The mere fact that a website "is available to serve Massachusetts residents" is insufficient to confer jurisdiction—"there must be more." *Motus*, 23 F.4th at 125. Here, there is no "more" in the Complaint, "such as evidence of specific targeting of forum residents" (rather than customers nationwide). *Id.* (affirming dismissal for lack of jurisdiction where the plaintiff "adduced no . . . evidence" that the defendant "sought to serve Massachusetts residents in particular").

That Plaintiff is a Massachusetts resident is insufficient. The alleged harm "would have occurred no matter the state Plaintiff was in." *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *5 (E.D. Cal. Sept. 30, 2022) (no jurisdiction where the plaintiff's data would have been collected using session replay software wherever he accessed the website at issue). Plaintiff's decision to access the website in Massachusetts is precisely the sort of "unilateral activity of a plaintiff" that the Supreme Court has held "cannot satisfy the requirement of contact with the forum State." *Walden*, 571 U.S. at 286, 290–91 (no jurisdiction where plaintiffs would have experienced the

injury "wherever else they might have traveled and found themselves"); *accord Harlow v. Children's Hosp.*, 432 F.3d 50, 58 (1st Cir. 2005) ("Plaintiffs cannot create jurisdiction by their unilateral activity.").

Similarly, as explained above (*supra* at p. 6), the conclusory allegation of "marketing and selling [of] goods in Massachusetts" (Compl. ¶ 9) is likewise insufficient because Plaintiff's claims have nothing to do with any such sales. *Motus*, 23 F.4th at 125 (no purposeful availment where plaintiff "adduced no such evidence" of website sales); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930 n.6 (2011) ("even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales").[8]  For the foregoing reasons, Plaintiff's action should be dismissed because Bloomingdale's is not subject to personal jurisdiction in Massachusetts on these claims.

## II.    PLAINTIFF FAILS TO STATE A CLAIM.

Even if this Court were to find that personal jurisdiction attaches to Bloomingdale's, which it should not, the Complaint's failure to state a claim provides an independent ground for dismissal. A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible only when it is supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In deciding a Rule 12(b)(6) motion, the Court may consider "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011).

---

[8] Since Plaintiff has failed to demonstrate both the relatedness and purposeful availment requirements for specific jurisdiction, the Court need not analyze the reasonableness requirement, which is "intended to aid the court in achieving substantial justice" in "close cases." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 61 (1st Cir. 2016).  This is not a "close" case.

A.      **The Massachusetts Wiretap Act Claim Should Be Dismissed.**

The Massachusetts Wiretap Act provides a civil cause of action against a defendant who "intercepts" a wire or oral communication.  Mass. Gen. Laws ch. 272, § 99(Q).  The Complaint fails to state a claim because (1) any interception occurred outside of Massachusetts, and (2) no communication was "intercepted" within the meaning of the Act.

1.      **No Interception Occurred in Massachusetts.**

Plaintiff's claim fails because he does not plead facts demonstrating that any interception occurred *in* Massachusetts.  It is well established that the Massachusetts Wiretap Act "does not apply to an interception occurring outside Massachusetts."  *Marquis v. Google, Inc.*, 2015 WL 13037257, at *7–8 (Mass. Super. Feb. 13, 2015) (collecting authorities); *see also Commonwealth v. Wilcox*, 823 N.E.2d 808, 815 (Mass. App. 2005) ("The defendant cites no authority for the proposition that [the Massachusetts Wiretap Act] applies to recordings made outside of Massachusetts.").  This limitation is particularly important in the online context because internet communications may be sent from "anywhere that has an internet or cellular connection": applying the Act to any internet communications originating in Massachusetts would therefore make compliance for those receiving internet communications "a game of chance." *Marquis*, 2015 WL 13037257,  at *8.

Applying this territorial limitation, Massachusetts courts have routinely held that the Act does not apply to internet communications unless they were "received and recorded" in Massachusetts. *Commonwealth v. Maccini*, 2007 WL 1203560, at *2 (Mass. Super. Apr. 23, 2007) (no violation where law enforcement investigator "received and recorded" internet chat room messages "not in Massachusetts, but in Ohio," where the investigator was located); *Marquis*, 2015 WL 13037257, at *7–8 (no violation where Google received and recorded users' emails with third parties outside of Massachusetts, where its servers were located); *see also MacNeill Eng'g Co. v.*

*Trisport, Ltd.*, 59 F. Supp. 2d 199, 202 (D. Mass. 1999) (no violation where a defendant received and recorded a telephone call in England).

Here, even assuming *arguendo* that Plaintiff's interactions on the website constituted "communications" under the statute (which they are not, *infra* at pp. 12–13), the Complaint does not support the inference that any such "communications" were received and recorded in Massachusetts.  The gravamen of the Complaint is that, when Plaintiff visited Bloomingdale's website, his movements were "captured" by "Session Replay Code" created by Bloomingdale's vendor, FullStory, and "sent . . . to" FullStory.  Compl. ¶¶ 1, 41, 48.  But FullStory is located in Georgia.  Ex. 1 (showing FullStory's state of incorporation and principal place of business, of which this Court may take judicial notice (*see supra* n.6)).  Although the Complaint vaguely refers to "various" other session replay vendors (Compl. ¶ 48), there are no factual allegations that any such vendors received and recorded Plaintiff in Massachusetts.  *Iqbal*, 556 U.S. at 679 (complaint must allege "more than the mere possibility of misconduct").

Accordingly, because the Complaint fails to plead facts demonstrating that the Massachusetts Wiretap Act applies to Plaintiff's alleged visits to Bloomingdale's website, the wiretapping claim should be dismissed.

### 2.     No Interception Occurred As a Matter of Law.

Plaintiff's claim separately fails because no "interception" is pleaded as a matter of law.  The Massachusetts Wiretap Act defines "interception" as (a) "to secretly hear, secretly record, or aid another to secretly hear or secretly record" (b) "the contents of any wire or oral

- 10 -

communication" (c) "through the use of any intercepting device."  Mass. Gen. Laws ch. 272, § 99(B)(4).  The Complaint supports none of these requirements.[9]

### a) The Alleged Collection Was Not Done "Secretly."

Plaintiff fails to plausibly allege that his interactions with Bloomingdale's website were collected "secretly."  Mass. Gen. Laws ch. 272, § 99(B)(4).  Courts evaluating the secrecy requirement look to "objective indicators" to determine whether "one can infer that the subject was aware that she might be recorded." *Glik v. Cunniffe*, 655 F.3d 78, 87 (1st Cir. 2011).  When a recording of a communication is not "kept hidden or unexplained," for example, the recording is *not* done "secretly." *Curtatone v. Barstool Sports, Inc.*, 169 N.E.3d 480, 483, 484 (Mass. 2021).

Here, the alleged data collection of which Plaintiff complains was not "kept hidden or unexplained": to the contrary, Bloomingdale's privacy policy on its website expressly discloses these practices.  Bloomingdale's privacy policy informs visitors to its website that Bloomingdale's (i) "use[s] cookies, web beacons, pixels, and other tracking technologies to deliver, monitor, and improve our websites," (ii) "collects . . . [i]nternet or other [n]etwork [a]ctivity [i]nformation . . . when you visit our websites," including "information regarding your interactions with our Platforms," and (iii) "may share your information . . . [w]ith [o]ur [s]ervice [p]roviders . . . who facilitate our operations and perform services on our behalf."  Ex. 2 at 6, 18, 21; Ex. 3 at 2, 6, 7; Ex. 4 at 2, 6.[10]  Any visitor to Bloomingdale's website was therefore on notice of the practices of which Plaintiff complains.

---

[9] Plaintiff also alleges in a conclusory manner that Bloomingdale's "disclose[d]" his allegedly intercepted communications. *E.g.*, Compl. ¶ 91.  Because Plaintiff has not plausibly alleged a predicate unlawful interception of any communications, there can be no derivative unlawful disclosure or use of such communications. *See* Mass. Gen. Laws ch. 272, § 99(C)(3)(a)–(b) (prohibiting disclosure and use only of "information [that] was obtained through interception").

[10] This language was included in the privacy policies on Bloomingdale's website going back to at least the beginning of the three-year limitations period. *See Birbiglia v. St. Vincent Hosp.*, 1994

Indeed, the very "nature and characteristics" of internet communications puts users like Plaintiff "on notice of the inherent recording" of their communications.  *Maccini*, 2007 WL 1203560, at *3 (no secret recording where communications at issue were instant messages). Recording is "inherent" to internet communications because any such communication—whether over instant messaging (as in *Maccini*) or on a website—"is automatically recorded on the recipient's computer."  *See id.*  As another court recognized two decades ago, "[a]ny reasonably intelligent person, savvy enough to be using the Internet . . . would be aware of the fact that messages are received in a recorded format, by their very nature."  *Commonwealth v. Proetto*, 771 A.2d 823, 829 (2001).  Plaintiff cannot plausibly maintain nowadays that it is a secret his internet communications are "automatically recorded" by the recipient of those communications.

### b)     No "Contents" of a "Communication" Were Allegedly Collected.

Plaintiff fails to allege an "interception" for the additional reason that he does not allege the collection of the "contents" of any wire or oral "communication."  Mass. Gen. Laws ch. 272, § 99(B)(4).

*First*, Plaintiff's alleged activity on Bloomingdale's website does not qualify as "communications" under the Massachusetts Wiretap Act.  In passing the Act, the Massachusetts

---

WL 878836, at *9 (Mass. Super. Dec. 29, 1994) (three-year statute of limitations under Massachusetts Wiretap Act).  The Court may consider these privacy policy disclosures, because such disclosures are "integral to" assessing the sufficiency of the Complaint's allegation that his purported communications were secretly recorded.  *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (considering advertising material outside of the complaint to evaluate false advertising claim because the material was "integral" to assessing the complaint's allegations); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (considering privacy policy on a defendant's website where the privacy policy "contradict[ed] Plaintiff's claim that he was unaware of and did not consent to the transfer of his personal information to a third party").

Legislature was "concerned with the protection of private 'conversations'"—in other words, the "exchange of sentiments, observations, opinions, ideas." *Commonwealth v. Rivera*, 833 N.E.2d 1113, 1120 n.10 (Mass. 2005) (reviewing legislative history).  Interpreting the Act "consistent with the statutory purpose," *Curtatone*, 169 N.E.3d at 483, the Massachusetts Supreme Judicial Court has limited its coverage to exchanges that "capture or reveal the defendant's thoughts or knowledge about some fact or subject."  *Commonwealth v. Gordon*, 666 N.E.2d 122, 134 (Mass. 1996) (no violation based on audiotape revealing a person's "bearing and manner of speaking").  The Act, therefore, "is not implicated when someone eavesdrops but does not intercept or record a conversation."  *Commonwealth v. Camilli*, 965 N.E.2d 226 n.4 (Mass. Ct. App. 2012).

Here, the allegedly collected website interactions between Plaintiff and Bloomingdale's are not "conversations."  There are no allegations that Plaintiff revealed his "thoughts or knowledge."  *Gordon*, 666 N.E.2d at 134.  Rather, the Complaint refers to "mouse movements," "clicks," "URLs of web pages visited," and "keystrokes" (Compl. ¶¶ 1, 26, 46)—more akin to a silent video or GPS data to which the Act does not apply.  *Commonwealth v. Rock*, 2013 WL 2371410, at *1 (Mass. Ct. App. 2013) (no violation based on webcam recording without audio because "[t]here is no statutory prohibition against recording purely visual images"); *Commonwealth v. Connolly*, 913 N.E.2d 356, 371 (Mass. 2009) ("Data from GPS devices . . . does not fall within the language of the wiretap statute").

*Second*, the Complaint also does not allege the collection of the "contents" of any communication.  Mass. Gen. Laws ch. 272, § 99(B)(4).  "Contents" are defined as "any information concerning [1] the identity of the parties to such communication or [2] the existence, contents, substance, purport, or meaning of that communication."  *Id.* § 99(B)(5).  Neither type of information was allegedly collected here.  Plaintiff does not even specify what he actually did on

Bloomingdale's website, let alone "*what* information was allegedly [collected]" about his own interactions, which "[t]he Court must know . . . to determine *whether* it qualifies as content." *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1322 (S.D. Fla. 2021); *cf.* Compl. ¶¶ 49–50 (alleging information collected concerning only the interactions of a generic "website user"). In any event, mouse movements, clicks, and similar interactions on a website "d[o] not convey the substance of any particular communication." *Goldstein*, 559 F. Supp. 3d at 1321, 1322 (holding that the information collected by session replay software, including mouse movements, clicks, pages visited, and keystrokes, are not "contents" under Florida's wiretap law).

### c)   Software Code Is Not an "Intercepting Device."

In addition, software code on a website is not an "intercepting device" within the meaning of the Massachusetts Wiretap Act. The Complaint contains a single conclusory allegation that "Session Replay Code"—defined as "embed[ded] snippets of JavaScript computer code . . . on Bloomingdale's website"—"is an 'intercepting device'." Compl. ¶¶ 1, 78. However, the Act defines an "intercepting device" as "any *device* or *apparatus* which is capable of . . . recording a wire or oral communication." Mass. Gen. Laws ch. 272 § 99(B)(3) (emphases added). Interpreting the words of the statute according to their "usual and accepted meanings," as required under Massachusetts law, *Curtatone*, 169 N.E.3d at 483, a "device" or "apparatus" is *tangible*. It does not encompass intangible software code on a website.

The "most natural reading" of the terms "device" and "apparatus" "calls to mind" something physical like "a piece of equipment"—not software code. *See Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 462–63 (D. Md. 2015) (software not a "device" or "apparatus"), *aff'd*, 851 F.3d 315 (4th Cir. 2017). This natural reading is supported by dictionary definitions, to which courts applying Massachusetts law routinely refer when interpreting undefined statutory terms. *See Curtatone*, 169 N.E.3d at 483–84 (usual and accepted meanings of terms may be derived from

"their use in . . . dictionary definitions").  Black's Law Dictionary, for example, defines "device" as "[a] mechanical invention" that may be "an apparatus or an article of manufacture," and directs readers to the term "machine" in the definition of "apparatus."  Black's Law Dictionary (11th ed. 2019) (defining "machine" as "[a] device or apparatus consisting of fixed and moving parts").  A snippet of code on a website is not something physical like a "mechanical invention" or a "machine."

Consistent with this plain meaning, many other courts have held that session replay and other software are not a "device" or "apparatus" under other wiretap laws.  *Potter v. Havlicek*, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (dismissing federal Wiretap Act claim because "the word 'device' does not encompass software"); *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *5 (Fla. Cir. Ct. June 17, 2021) (dismissing Florida wiretap claim because session replay software is not a "device or apparatus"); *Cardoso v. Whirlpool Corp.*, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021) (same); *Connor v. Whirlpool Corp.*, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021) (same); *see also United States v. Ackies*, 918 F.3d 190, 199 n.5 (1st Cir. 2019) (rejecting argument that software is a "device" under federal Stored Communications Act because "software is not a 'device' under its plain meaning").  This Court should hold the same.

### B.    The Invasion of Privacy Claim Should Be Dismissed.

Plaintiff also does not state a statutory claim for invasion of privacy under Massachusetts law, Mass. Gen. Laws ch. 214, § 1B, which he bases on the same alleged conduct underlying the Massachusetts Wiretap Act claim.[11]  "In order to prevail on a claim alleging an invasion of privacy,

---

[11] Although Plaintiff asserts that that "Massachusetts common law recognizes the tort of invasion of privacy" (Compl. ¶ 88), the First Circuit and courts in this District have rejected that proposition. *Spencer v. Roche*, 659 F.3d 142, 150 n.6 (1st Cir. 2011) ("To the extent that the appellant couches his invasion of privacy claim in the common law, Massachusetts has never recognized such a tort."); *see, e.g.*, *Portnoy v. Insider, Inc.*, 2022 WL 16748583, at *10 (D. Mass. Nov. 7, 2022) ("Massachusetts does not recognize a common-law cause of action for invasion of privacy.").

a plaintiff must prove that there was 1) a gathering and dissemination of facts of a private nature that 2) resulted in an unreasonable, substantial or serious interference with his privacy." *Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015) (Gorton, J.).  Plaintiff fails to plausibly allege either requirement.

*First,* there was no alleged gathering or dissemination of private facts.  "[T]o qualify for protection under the statute, the disclosed facts must be 'of a highly personal or intimate nature.'" *Id.*.  The Complaint does not even meet the basic requirement to plead which specific "facts" were collected or disclosed.  *Casey v. United Parcel Serv., Inc.*, 2022 WL 2834258, at *6 (D. Mass. July 20, 2022) (dismissing claim for failure to allege that any specific fact was disclosed); *cf.* Compl. ¶¶ 49–50 (alleging information collected from interactions by a generic "website user").  Courts have found far more personal and intimate information insufficient to satisfy this element. *Branyan*, 105 F. Supp. 3d at 126 ("name, home address, and employer"); *Philbrook v. Perrigo*, 637 F. Supp. 2d 48, 55 (D. Mass. 2009) (Gorton, J.) ("mug-shot"); *French v. United Parcel Serv., Inc.*, 2 F. Supp. 2d 128, 131 (D. Mass. 1998) ("fact that a fellow employee drank too much at [plaintiff's] house").

*Second*, the alleged collection and sharing of data with Bloomingdale's vendor was not an unreasonable, substantial or serious interference.  A plaintiff must establish that the alleged interference was "both unreasonable *and* either substantial or serious." *Ayash v. Dana-Farber Cancer Inst.*, 822 N.E.2d 667, 682 (Mass. 2005) (emphasis added).  There was no "unreasonable" interference here.  "[A]n intrusion into one's privacy is not unreasonable if it serves a legitimate business purpose." *Chiocca v. Town of Rockland*, 2022 WL 4817094, at *20 (D. Mass. Oct. 3, 2022) (citing *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 69 (1st Cir. 2020)).  That is precisely the circumstance here.  As the Complaint recognizes, "websites" like Bloomingdale's "utilize Session

Replay Code for some legitimate purposes" (Compl. ¶ 24), including "to improve customer experiences" on its website (*id.* ¶ 13). *See, e.g.*, *Dirico v. MBNA Am. Bank, N.A.*, 2009 WL 16736, at *1 (Mass. App. Ct. Jan. 5, 2009) (no violation where bank's questioning of customer about credit card expenditures served legitimate business purpose of determining customer's ability to repay). Indeed, Bloomingdale's informed visitors like Plaintiff through its privacy policy that it was engaging in such practices "to deliver, monitor, and improve our websites" (*supra* at p. 11), which are legitimate purposes.

Nor was the alleged interference "substantial or serious." Because there are no allegations specifying what information about Plaintiff was collected and disclosed (*supra* at pp. 13–14), the Complaint fails to plead any interference was "substantial or serious," as opposed to "only trivial or insubstantial." *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 N.E.2d 912, 914, 916 (Mass. 1991) ("the degree of intrusion is important" in evaluating claims). Moreover, Plaintiff voluntarily provided data to Bloomingdale's by entering such data on its website. *Chase v. First Par. Church*, 2000 WL 281663, at *4 (Mass. Super. Feb. 3, 2000) (no violation where plaintiff "voluntarily" shared private facts). It does not matter whether Bloomingdale's uses vendors to evaluate the data. *See Kelley v. CVS Pharmacy, Inc.*, 2007 WL 2781163, at *3 (Mass. Super. Aug. 24, 2007) (no substantial or serious interference where defendant "contract[ed] out . . . work" that would have been proper had it been done in-house).

*Finally*, to the extent the invasion-of-privacy claim is brought under an "intrusion upon seclusion" theory, such a theory, even if cognizable, fares no better. *Axford v. TGM Andover Park, LLC*, 2021 WL 681953, at *13 (D. Mass. Feb. 22, 2021) (noting "it is not fully settled" whether such a theory is cognizable); *cf.* Compl. ¶ 93. At a minimum, an intrusion upon seclusion must be "highly offensive to the ordinary reasonable person." *Cloutier v. City of Lowell*, 2017 WL

11488633, at *27 (D. Mass. July 12, 2017).  Plaintiff's allegations do not meet this high standard.

Actionable intrusions typically involve "physical invasions," "harassment," or "bodily intrusions" not at issue here.  *Axford*, 2021 WL 681953, at *13 (no violation where landlord allegedly "ransacked" and "lost, destroyed, or stole" plaintiff's personal belongings while conducting a repair).  As another court recognized in dismissing a similar claim, "[t]he act of collecting [a plaintiff's] keystrokes, mouse clicks, and PII is simply not the type of highly offensive act to which liability can attach."  *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 122 (W.D. Pa. 2019) (dismissing intrusion upon seclusion claim under Pennsylvania law).

At any rate, for the same reasons discussed above, the Complaint also fails to plead an "unreasonable, substantial or serious" interference—a statutory requirement equally applicable to any intrusion upon seclusion theory.  *See Cloutier*, 2017 WL 11488633, at *27 (no violation under intrusion theory where intrusion was "not an unreasonable and substantial or serious interference").

## CONCLUSION

For the foregoing reasons, Defendant Bloomingdale's respectfully requests that the Court dismiss the Complaint in its entirety for lack of personal jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.  *See Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) (dismissal with prejudice proper if "amendment would be futile").

Dated:  February 3, 2023

Respectfully Submitted:

/s/ *Eric Bosset*
Eric Bosset (*pro hac vice*)
ebosset@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5906

George W. Vien (BBO #547411)
gwv@dcglaw.com
DONNELLY, CONROY, & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Telephone: (617) 720-2880

Emily Johnson Henn (*pro hac vice*)
ehenn@cov.com
Matthew Q. Verdin (*pro hac vice*)
mverdin@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

*Attorneys for Defendant*
*Bloomingdales.com, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(c).

/s/ *Eric Bosset*
Eric Bosset