# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| SCOTT ROSENTHAL, individually and on behalf of all others similarly situated, ) | Case No. 1:22-cv-11944-NMG |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BLOOMINGDALE'S INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION & BACKGROUND ........................................................................ 1

I.  THIS COURT HAS PERSONAL JURISDICTION OVER BLOOMINGDALE'S .......... 2

    A.  The Long-Arm Statute Extends Jurisdiction over Defendant ................................ 2

    B.  Extending Personal Jurisdiction over Bloomingdale's Is Consistent with Due
        Process ..................................................................................................................... 4

        1.  Plaintiff's Claims Relate to Bloomingdale's Forum Contacts.................... 5

        2.  Bloomingdale's Purposefully Availed Itself of Jurisdiction in
              Massachusetts ............................................................................................ 6

              a.  Voluntary and Foreseeable ............................................................. 7

              b.  Something More:  Knowledge and Intent ....................................... 8

II.  BLOOMINGDALE'S CONDUCT VIOLATES THE WIRETAP ACT AND IS AN
     INVASION OF PRIVACY ........................................................................................ 10

    A.  Plaintiff Has Sufficiently Pled a Wiretap Claim ................................................... 10

        1.  Bloomingdale's Interception Occurred in Massachusetts.......................... 10

        2.  Bloomingdale's Use of Session Replay Constitutes an Interception ........ 11

              a.  Plaintiff Alleged Bloomingdale's Use of Session Replay Code
                  Was "Secret" ................................................................................. 11

              b.  Plaintiff's Website Communications are Communications
                  Containing Contents Under Massachusetts Law ......................... 13

              c.  Session Replay Code Constitutes an Intercepting Device ........... 17

    B.  Plaintiff Has Pled an Invasion of Privacy Claim. ................................................. 18

CONCLUSION.......................................................................................................... 20

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Acushnet Co. v. Zimventures, LLC*,
   155 F. Supp. 3d 97 (D. Mass. 2015) ........................................................................7

*Ajemian v. Yahoo!, Inc.*,
   83 Mass. App. Ct. 565 (Mass. App. Ct. 2013), *aff'd*, 84 N.E.3d 766 (Mass.
   2017) ......................................................................................................................12

*Branyan v. Sw. Airlines Co.*,
   105 F. Supp. 3d 120 (D. Mass. 2015) ....................................................................18

*Byars v. Goodyear Tire & Rubber Co.*,
   No. 522CV01358SSSKKX, 2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) ............16

*Calder v. Jones*,
   465 U.S. 783 (1984) .................................................................................................6

*Chouinard v. Marigot Beach Club & Dive Resort*,
   No. 20-10863-MPK, 2021 WL 2256318 (D. Mass. June 3, 2021) ..........................6

*Collision Comm'ns, Inc. v. Nokia Sols. & Networks Oy*,
   485 F. Supp. 3d 282 (D. Mass. 2020) .....................................................................3

*Commonwealth v. Camilli*,
   81 Mass. App. Ct. 1129 (2012) .......................................................................13, 14

*Commonwealth v. Gordon*,
   666 N.E.2d 122 (Mass. 1996) ...............................................................................13

*Commonwealth v. Hyde*,
   750 N.E. 2d 963 (Mass. 2001) .........................................................................14, 15

*Commonwealth v. Jackson*,
   349 N.E.2d 337 (Mass. 1976) ...............................................................................12

*Commonwealth v. Maccini*,
   No. 06-0873, 2007 WL 1203560 (Mass. Super. Apr. 23, 2007) ...........................11

*Commonwealth v. Mejia*,
   832 N.E.2d 693 (Mass. 2005) .........................................................................14, 15

*Commonwealth v. Rivera*,
   833 N.E.2d 1113 (Mass. 2005) .............................................................................13

*Commonwealth v. Wilcox*,
  63 Mass. App. Ct. 131, 823 N.E.2d 808 (2005), *aff'd*, 446 Mass. 61, 841
  N.E.2d 1240 (2006)....................................................................................................11

*Cook v. WHDH-TV, Inc.*,
  No. 941269, 1999 WL 1327222 (Mass. Super. Mar. 4, 1999) ...............................18

*Cossart v. United Excel Corp.*,
  804 F.3d 13 (1st Cir. 2015)........................................................................................3

*Curtatone v. Barstool Sports, Inc.*,
  169 N.E.3d 480 (Mass. 2021)...................................................................................13

*Dist. Att'y for Plymouth Dist. v. New England Tel. & Tel. Co.*,
  399 N.E.2d 866 (Mass. 1980) ...................................................................................15

*Edvisors Network, Inc. v. Educ. Advisors, Inc.*,
  755 F. Supp. 2d 272 (D. Mass. 2010) .........................................................................9

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*,
  848 F. Supp. 271 (D. Mass. 1994) ..............................................................................2

*French v. United Parcel Serv., Inc.*,
  2 F. Supp. 2d 128 (D. Mass. 1998) ...........................................................................18

*Glik v. Cunniffe*,
  655 F.3d 78 (1st Cir. 2011).......................................................................................11

*Goldstein v. Costco Wholesale Corp.*,
  559 F. Supp. 3d 1318 (S.D. Fla. 2021) ...............................................................14, 15

*Goldstein v. Luxottica of Am., Inc.*,
  No. 21-80546-CIV, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) .........................15

*Green v. Cosby*,
  99 F. Supp. 3d 223 (D. Mass. 2015) .........................................................................20

*Hamilton v. Young Mgmt., LLC*,
  No. CV 20-11307-PBS, 2022 WL 17736915 (D. Mass. Dec. 16, 2022)...........2, 5, 6

*Harlow v. Children's Hosp.*,
  432 F.3d 50 (1st Cir. 2005)........................................................................................6

*Hasbro, Inc. v. Clue Computing, Inc.*,
  994 F. Supp. 34 (D. Mass. 1997) ......................................................................2, 5, 7

*In re Carrier IQ, Inc.*,
  78 F.Supp.3d 1051 (N.D. Cal. 2015) ........................................................................17

*In re Colonial Mortg. Bankers Corp.*,
  324 F.3d 12 (1st Cir. 2003) ..............................................................................................8

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ..........................................................................................19

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015) ............................................................................................19

*In re Nickelodeon Consumer Privacy Litig.*,
  827 F.3d 262 (3d Cir. 2016) ............................................................................................19

*Jacome v. Spirit Airlines Inc.*,
  No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ...................15

*Klumb v. Goan*,
  884 F.Supp.2d 644 (E.D. Ten. 2012) ..............................................................................17

*Lin v. TipRanks, Ltd.*,
  No. 19-cv-11517, 2019 WL 6211246 (D. Mass. Nov. 21, 2019) ......................................8

*Little Kids, Inc. v. 18th Ave. Toys, Ltd.*,
  No. 18-533WES, 2020 WL 7264267 (D.R.I. Dec. 10, 2020) .............................................5

*Luis v. Zang*,
  833 F.3d 619 (6th Cir. 2016) ...........................................................................................17

*MacNeill Eng'g Co. v. Trisport, Ltd.*,
  59 F. Supp. 2d 199 (D. Mass. 1999) ...............................................................................11

*Makkinje v. Extra Space Storage, Inc.*,
  No. 8:21-CV-2234, 2022 WL 80437 (M.D. Fla. Jan. 7, 2022) ........................................17

*Marquis v. Google*,
  No. 11-2808, 2015 WL 13037257 (Mass.Super. Feb. 13, 2015) ...............................11, 12

*Mass. Sch. Of L. at Andover, Inc. v. Am. Bar Ass'n*,
  142 F.3d 26 (1st Cir. 1998) ...............................................................................................5

*Massie v. General Motors Co.*,
  No. 1:20-cv-01560, 2021 WL 2142728 (E.D. Cal. May 26, 2021) ....................................5

*McLaughlin v. Meehan*,
  No. 1681CV00866, 2018 WL 1041371 (Mass. Super. Jan. 19, 2018) ........................18, 19

*Merced v. JLG Indus., Inc.*,
  170 F. Supp. 2d 65 (D. Mass. 2001) .................................................................................3

*Morphotrust USA, LLC v. Identrix, LLC*,
    No. 16-cv-10074, 2016 WL 3512131 (D. Mass. June 21, 2016)..............................................9

*Motus, LLC v. CarData Consultants, Inc.*,
    23 F.4th. 115 (1st Cir.2022)..............................................................................................9

*Motus, LLC v. CarData Consultants Inc.*,
    520 F. Supp. 3d 87 (D. Mass. 2021) .................................................................................6, 9

*N. Light Tech. v. N. Lights Club*,
    97 F. Supp. 2d. 96 (D. Mass. 2000) ...............................................................................4, 5

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ........................................................................................12

*Philbrook v. Perrigo*,
    637 F. supp. 2d 48 (D. Mass. 2009) ................................................................................18

*Polay v. McMahon*,
    468 Mass. 379 (2014) ....................................................................................................18

*Popa v. Harriet Carter Gifts, Inc.*,
    426 F. Supp. 3d 108 (W.D. Pa. 2019)..........................................................................13, 17

*Potter v. Havlicek*,
    No. 3:06-CV-211, 2008 WL 2556723 (S.D. Ohio June 23, 2008).........................................17

*Pritzer v. Yari*,
    42 F.3d 53 (1st Cir. 1994)...............................................................................................5

*Rene v. G.F. Fishers, Inc.*,
    817 F.Supp.2d 1090 (S.D. Ind. 2011) ..............................................................................17

*Rich v. Rich*,
    No. BRCV200701538, 2011 WL 3672059 (Mass. Super. July 8, 2011) ...........................16, 17

*Rodriguez v. Samsung Elecs. Co. Ltd.*,
    827 F. Supp. 2d 47 (D. Mass. 2011) .................................................................................5

*Sacco v. Mouseflow, Inc.*,
    2022 WL 4663361 (E.D. Cal Sept. 30, 2022)......................................................................6

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021) ..............................................................................14

*SCVNGR, Inc. v. Punchh, Inc.*,
    478 Mass. 324 (2017) .....................................................................................................2

*Shefts v. Petrakis*,
  No. 10-cv-1104, 2012 WL 4049484 (C.D. Ill. 2012) ..............................................18

*Smith v. Maryland*,
  442 U.S. 735 (1979).................................................................................................15

*Sportschannel New England Ltd. P'ship v. Fancaster, Inc.*,
  No. 09CV11884-NG, 2010 WL 3895177 (D. Mass. Oct. 1, 2010)...........................7

*U.S. v. Hutchins*,
  361 F. Supp. 3d 779 (E.D. Wis. 2019)....................................................................17

*United States v. Moore-Bush*,
  36 F.4th 320 (1st Cir. 2022)....................................................................................19

*Vapotherm Inc. v. Santiago*,
  38 F.4th 252 (1st Cir. 2022)......................................................................................5

*Venture Tape Corp. v. McGills Glass Warehouse*,
  292 F. Supp. 2d 230 (D. Mass. 2003) ....................................................................4, 5

*Woo v. Spackman*,
  988 F.3d 47 (1st Cir. 2021)...............................................................................14, 15

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
  952 F. Supp. 1119 (W.D. Pa. 1997).........................................................................7

## STATUTES, RULES, AND REGULATIONS

CAL. PENAL CODE
  §631(a) ....................................................................................................................14

FLA. STAT.
  §934.02(12)(c) .........................................................................................................14

MASS. GEN. LAWS
  ch. 214 §1B ...........................................................................................................2, 18
  ch. 223, §3(c) ............................................................................................................3
  ch. 223A, §3 ..............................................................................................................2
  ch. 223A, §3(a) .........................................................................................................3
  ch. 223A, §3(c) .........................................................................................................3
  ch. 223A, §3(d) ......................................................................................................3, 4
  ch. 272, §99(A) .......................................................................................................10
  ch. 272, §99(B)(3)...................................................................................................17
  ch. 272, §99(B)(5)...................................................................................13, 15, 16
  ch. 272 §99(Q) ..........................................................................................................2

**OTHER AUTHORITIES**

Restatement (Second) of Conflict Laws
    §145 (1971)....................................................................................................................4

## I.        INTRODUCTION AND BACKGROUND

Plaintiff Scott Rosenthal ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to Defendant Bloomingdale's Inc. ("Bloomingdale's" or "Defendant") Motion to Dismiss Plaintiff's Complaint (the "Motion").  Bloomingdale's procures and directs third-party vendors, such as FullStory (these vendors are referred to herein as "Session Replay Providers") to embed snippets of JavaScript computer code which was deployed on Plaintiff's and Class Members' visits to Bloomingdale's website for the purpose of intercepting and surreptitiously recording the website visitor's electronic communications with the Bloomingdale's website ("Session Replay Code").  Class Action Complaint, "CAC," ¶1.  The Session Replay Code secretly records, in real-time, the personal and private electronic communications Plaintiff and the Class make while they are in Massachusetts.  The fact that Bloomingdale's may operate its Session Replay Code from New York does not avoid the fact that Bloomingdale's knowingly and intentionally made the recordings in Massachusetts and in violation of Massachusetts law.

Plaintiff alleges Bloomingdale's knew that its use of Session Replay Code in Massachusetts would collect information from Plaintiff and other Massachusetts residents.  *Id.*, ¶¶8-9.  Indeed, both desktop and mobile versions of Bloomingdale's website allow Plaintiff and other users to search for nearby stores by providing their "current location," as furnished by the location-determining tools of the user's device or by the user's IP address; users can also physically input an address into a search bar on the website.  *Id.*, ¶10.  Bloomingdale's use of Session Replay Code results in the electronic equivalent of "looking over the shoulder" of each visitor to the Bloomingdale's website for the entire duration of their website interaction.  *Id.*, ¶2. Bloomingdale's wiretapping with Session Replay Code is ongoing and continues to present legitimate harm to website visitors, all while Bloomingdale's benefits from the consumer data to

1

shape products, solutions, and the buyer experience—which increases Bloomingdale's ability to generate profits. *Id.*, ¶¶13- 15, 50, 81, 95.

Bloomingdale's seeks dismissal of Plaintiff's Complaint claiming that it is not subject to jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) because Bloomingdale's contacts with Plaintiff in Massachusetts fail to establish jurisdiction over it. Bloomingdale's also seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) claiming that its use of Session Replay Code to capture Plaintiff's and the Class' Website Communications does not state a claim for violation of Massachusetts Wiretap Statute, MASS. GEN. LAWS ch. 272 §99(Q) ("Wiretap Statute") and Invasion of Privacy, MASS. GEN. LAWS ch. 214 §1B ("Privacy Statute"). As set forth herein, Bloomingdale's arguments fail.

## II.     THIS COURT HAS PERSONAL JURISDICTION OVER BLOOMINGDALE'S

This Court has personal jurisdiction over Bloomingdale's under the Massachusetts Long-Arm Statute ("Long-Arm Statute")[1] consistent with constitutional due process. *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34, 39 (D. Mass. 1997); *see also Hamilton v. Young Mgmt., LLC*, No. CV 20-11307-PBS, 2022 WL 17736915, at *2-3 (D. Mass. Dec. 16, 2022) (applying *prima facie* standard to jurisdiction inquiries where there has been no evidentiary hearing).

### A.      The Long-Arm Statute Extends Jurisdiction over Defendant

The Long-Arm Statute, MASS. GEN. LAWS ch. 223A, §3, provides: "[a] court may exercise personal jurisdiction over a person ... as to a cause of action in law or equity arising from the person's" one or more specific acts or omissions, as enumerated in the statute. *See also Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 848 F. Supp. 271, 276 (D. Mass. 1994) ("[A]nything but the most incidental commercial contact" is sufficient to satisfy the statute.)

---

[1]      Bloomingdale's failed to analyze the requirements of the Long-Arm Statute in its opening brief. *See* Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem.") at 3 n. 4. Massachusetts courts require an analysis of this statute before approaching the constitutional due process question. *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 330 (2017).

Here, personal jurisdiction exists under the Long-Arm Statute through: (1) MASS. GEN. LAWS ch. 223A, §3(a); (2) MASS. GEN. LAWS ch. 223, §3(c); and (3) MASS. GEN. LAWS ch. 223A, §3(d).   Specifically, jurisdiction through MASS. GEN. LAWS ch. 223A, §3(a) only requires a plaintiff to allege that defendant has "transacted business" in the forum state and "the transacted business [be the] 'but for' cause of the harm alleged in the claim." *Cossart v. United Excel Corp.*, 804 F.3d 13, 18 (1st Cir. 2015); *see also Merced v. JLG Indus., Inc.*, 170 F. Supp. 2d 65, 71 (D. Mass. 2001) (construing "transacted business" broadly).   To transact business, a defendant must have "attempted to participate in the Commonwealth's economic life." *Cossart*, 804 F.3d at 18. Here, Plaintiff alleges Bloomingdale's offered and directed its website to Plaintiff and other Massachusetts residents for the purpose of marketing and selling products and services in Massachusetts. CAC, ¶9.  Plaintiff further alleges that Bloomingdale's used Session Replay Code to collect consumer data from Massachusetts residents to target Massachusetts consumers with goods and services and increase its profits within the forum.  *Id.*, ¶¶13-15, 87, 93.   Clearly, jurisdiction pursuant to Section 3(a) is satisfied.

Jurisdiction is also satisfied pursuant to MASS. GEN. LAWS ch. 223A, §3(c) which requires some act (or omission) in the Commonwealth that caused Plaintiff harm.  *Collision Comm'ns, Inc. v. Nokia Sols. & Networks Oy*, 485 F. Supp. 3d 282, 293 (D. Mass. 2020) (reasoning that intent to cause harm within the Commonwealth may satisfy the act required for §3(c) jurisdiction).  Here, Bloomingdale's directed and offered its website to Massachusetts residents, including Plaintiff, without first disclosing its use of Session Replay Code or its intent to record Massachusetts residents' Website Communications.  These acts and omissions invaded Plaintiff's privacy and caused him injuries, including those related to the exposure of his personal data.  CAC, ¶¶59, 62, 80.  Section 3(c) is satisfied.

Lastly, Plaintiff has established jurisdiction pursuant to MASS. GEN. LAWS ch. 223A, §3(d) which requires a defendant to (1) regularly do[] or solicit[] business or engage[] in any other persistent course of conduct [in Massachusetts] or derive[] substantial revenue from goods used or consumers or services rendered [in Massachusetts], and (2) caus[e] injury in this Commonwealth. MASS. GEN. LAWS ch. 223A, §3(d).   Plaintiff alleges that Bloomingdale's regularly solicits business in Massachusetts via an interactive website (CAC, ¶¶8-9) and sells products and services in Massachusetts to Massachusetts residents.  *Id.*,  ¶¶8-9, 39, 47-54; *see also Venture Tape Corp. v. McGills Glass Warehouse*, 292 F. Supp. 2d 230, 231-232 (D. Mass. 2003) (holding maintaining an "interactive website that is continuously available to Massachusetts residents" satisfies "regular solicitation" and finding a website to be interactive in that users may use it to place orders, to e-mail the company, or subscribe to its mailing list"); s*ee also N. Light Tech. v. N. Lights Club*, 97 F. Supp. 2d. 96, 105 (D. Mass. 2000); *Digital,* 960 F. Supp. at 467.

*Second,* when, like here, an invasion of privacy involves an intrusion upon the plaintiff's solitude, the place of invasion and the location of the injury are the same.  Restatement (Second) of Conflict Laws §145 (1971).  Bloomingdale's invaded Plaintiff's and the Class members' privacy in Massachusetts, and caused tortious injuries therein.  CAC, ¶¶5, 8-9.  Thus, even if Bloomingdale's acted outside of the forum, its conduct caused harm within the Commonwealth and Section 3(d) is satisfied.

## B.    Extending Personal Jurisdiction over Bloomingdale's Is Consistent with Due Process

This Court has specific personal jurisdiction over Bloomingdale's consistent with Constitutional Due Process because it engaged in wiretapping of Massachusetts' consumers' Website Communications.   To establish specific personal jurisdiction over an out-of-state defendant, a defendant must have "minimum contacts" with Massachusetts so that the exercise of

jurisdiction does not offend "traditional notions of fair play and substantial justice." *Hasbro*, 994 F. Supp. at 44.  Minimum contacts exist if the three factors of relatedness, purposeful availment, and reasonableness are fulfilled.  *Venture*, 292 F. Supp. 2d at 232.  Plaintiff sufficiently alleges each of the "minimum contacts" factors. [2]

### 1.    Plaintiff's Claims Relate to Bloomingdale's Forum Contacts

Relatedness requires a demonstrable nexus between the claims and the forum-based activities.  *See Hasbro*, 994 F. Supp. at 44 (finding relatedness prong met where website was continuously accessible by Massachusetts residents, defendant advertised in Massachusetts through its website, and injury occurred in the forum). [3][4]  The relatedness analysis is "flexible" and "relaxed" demanding only defendant's conduct in Massachusetts to form "an important, or at least material, element of proof" in the case.  *Hamilton*, 2022 WL 17736915, at * 5.

---

[2]     Defendant did not analyze reasonableness or argue that litigating in Massachusetts is unreasonable.  Def.'s Mem. at 8, note 8.  Briefly, the reasonableness inquiry considers five factors: (1) defendant's burden in appearing in the court; (2) forum state's interest in hearing the suit; (3) plaintiff's convenience and interest in effective relief; (4) judicial economy, and (5) common interests of all interested states in promoting substantive social policies.  *Hasbro*, 994 F. Supp. at 45.  Bloomingdale's cannot establish unreasonableness because (1) cross-state travel is not a basis for burden, *Pritzer v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994); *N. Light*, 97 F. Supp. 2d at 107; *Digital*, 960 F. Supp. at 471; (2) MA has an interest in protecting its citizens, *Hamilton*, 2022 WL 1773915, at *6; (3) Plaintiff chose MA, *Digital*, 960 F. Supp. at 471; (4) judicial efficiency and fairness to the Class promotes continuing litigation here, *Hasbro*, 994 F. Supp. at 45-46; and (5) common state interests support litigation here.  *See Digital*, 960 F. Supp. at 471 (finding it "troublesome to allow those who conduct business on the Web to insulate themselves against jurisdiction in every state, except in the state (if any) where they are physically located.").

[3]     Defendant cites *Massie v. General Motors Co.*, No. 1:20-cv-01560, 2021 WL 2142728, at *1 (E.D. Cal. May 26, 2021) to argue that "plaintiffs' claims arise from and relate to conduct outside the forum," including procurement of Session Replay Vendors outside of Massachusetts.  Def.'s Mem. at 4 (unless otherwise noted, all emphasis is added and internal citations are omitted).  *Massie* is an unpublished, non-precedential California case that held a defendant's passive website, which had simply "posted information on an Internet Web site" that was accessible to users in foreign jurisdictions did not support personal jurisdiction.  *Massie*, 2021 WL 2142728 at *4.  *Massie* is distinguishable here because, *inter alia*, unlike in *Massie*, Plaintiff alleged bloomingdales.com is an interactive website, intentionally directed at Massachusetts residents, that solicited actual, direct sales from Massachusetts residents, and offered residents' the ability to pick-up products in stores in Massachusetts.  *Id.*; CAC, ¶¶8-9; *supra* note 7.  Plaintiff also alleged Bloomingdale's knew it was soliciting and recording Plaintiff in Massachusetts.

[4]     Defendant cites other cases, including *Vapotherm Inc. v. Santiago*, 38 F.4th 252, 261 (1st Cir. 2022), *Mass. Sch. Of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 36 (1st Cir. 1998), and *Rodriguez v. Samsung Elecs. Co. Ltd.*, 827 F. Supp. 2d 47, 52 (D. Mass. 2011), and *Little Kids, Inc. v. 18th Ave. Toys, Ltd.*, No. 18-533WES, 2020 WL 7264267, at *8 (D.R.I. Dec. 10, 2020), Def.'s Mem. at 6, but, unlike here, the forum contacts in these cases were limited to plaintiff's injury occurring there, or the defendants lacked knowledge of the tortious conduct occurring in the forum.  *Id.*; CAC, ¶9.

Bloomingdale's interactive website, which allowed Plaintiff and other Massachusetts customers to directly purchase goods and services and communicate with Bloomingdale's (CAC, ¶¶1, 8-9), was directed at and continually accessible to Massachusetts residents, and intentionally recorded Website Communications in Massachusetts. *Id.*, ¶¶8-9, 13. The tortious injury (the invasion of privacy and recording without consent) occurred when Plaintiff visited the website in Massachusetts and could not have occurred otherwise.[5] As a result, Plaintiff has satisfied relatedness to the forum.

### 2.  Bloomingdale's Purposefully Availed Itself of Jurisdiction in Massachusetts

To purposefully avail itself of Massachusetts jurisdiction, Bloomingdale's contacts with Massachusetts must be voluntary, meaning they were the result of Defendant's choice, and foreseeable, such that it should reasonably anticipate being hauled into court in Massachusetts. *Chouinard v. Marigot Beach Club & Dive Resort*, No. 20-10863-MPK, 2021 WL 2256318, at *9 (D. Mass. June 3, 2021); *see also Hamilton*, 2022 WL 17736915, at *6 (finding defendant voluntarily sent advertisements to Massachusetts and this satisfied purposeful availment); *Digital*, 960 F. Supp. at 470.[6] When jurisdiction is premised on a defendant's interaction with the forum state through its website, like here, courts require "something more" than a nationally available website. *Motus, LLC v. CarData Consultants Inc.*, 520 F. Supp. 3d 87, 92 (D. Mass. 2021).

---

[5]    Defendant argues that the only relevant contacts are those "defendant himself creates." Def.'s Mem. at 5 (*citing Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Unlike *Walden*, Defendant here did create its contacts with Massachusetts and intentionally used Session Replay Code within the forum. *Id.*; *see also Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (finding defendant caused injury in California by circulating its libelous story to California residents).

[6]    Bloomingdale's cites *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *5 (E.D. Cal Sept. 30, 2022) and *Harlow v. Children's Hosp.*, 432 F.3d 50, 58 (1st Cir. 2005) to argue that Plaintiff's "unilateral" activity cannot create personal jurisdiction. Def.'s Mem. at 7-8. These cases are inapposite, however, because in *Mouseflow*, the defendant, unlike Bloomingdale's, had no knowledge of the plaintiff's location, and in *Harlow*, there were no goods in the stream of commerce, or anything else that could create minimum contacts with the forum. *Id.*

Plaintiff clearly satisfies the voluntary, foreseeable, and "something more" requirements and demonstrates Bloomingdale's purposeful availment of the laws of Massachusetts.

<strong>a.        Voluntary and Foreseeable</strong>

Bloomingdale's voluntarily and intentionally implemented an interactive website, which included session replay tracking technology, and aimed that website at Massachusetts residents. One test to determine whether a company's website activities within a forum establish personal jurisdiction, is the approach set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *Sportschannel New England Ltd. P'ship v. Fancaster, Inc.*, No. 09CV11884-NG, 2010 WL 3895177, at *5 (D. Mass. Oct. 1, 2010). Under *Zippo*, the "likelihood of personal jurisdiction is directly proportionate to the level of interactivity of the website." *Id.* Indeed, *Zippo* found personal jurisdiction is "clearly" established if a defendant conducts regular business over the internet, through contracts or other interactive acts. *Id.*; *see also Acushnet Co. v. Zimventures, LLC*, 155 F. Supp. 3d 97, 102 (D. Mass. 2015) (finding websites that "knowing[ly] and repeated[ly] transmit[] … computer files over the Internet" are transactional and are "sufficient to show purposeful availment"). Indeed, commercial internet storefronts, like www.bloomingdales.com, which allow customers to directly purchase goods, exchange communications with the defendant, and create online accounts are interactive and sufficient to support the exercise of personal jurisdiction. *See Zippo* 952 F. Supp. at 1124 ("[W]hen an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper. Different results should not be reached simply because business is conducted over the Internet.").

Courts may also consider whether defendant took any action to avoid activity in Massachusetts, such as removing advertisements or storefronts from the forum. *See Hasbro*, 994 F. Supp. at 45 (holding the defendant purposefully directed its website, and subsequently its

7

advertising, to all states and took no action to avoid advertising in Massachusetts).  That is certainly not the case here, where Bloomingdale's established stores in Massachusetts and directed Massachusetts residents to them via www.bloomingdales.com.[7]

Bloomingdales.com is in the most interactive category of a website under the *Zippo* analysis because it conducts regular business with Massachusetts customers through its website. The website offers online customers full access to Bloomingdale's products and services and the option to purchase products and schedule in-person pick-ups directly from the website.  CAC, ¶¶8-9.  Additionally, Bloomingdale's knew that Massachusetts residents visited its website and as a result, that the site may cause harm in Massachusetts.  *Id.*, ¶¶8-9.  Bloomingdale's could have avoided Massachusetts, and liability for its unlawful recording, but it chose to include the forum in its website's reach and chose to record customers there.  Bloomingdales.com's deliberate interactivity with Massachusetts residents and specific targeting of Massachusetts businesses firmly establishes Bloomingdale's choice to conduct business in Massachusetts (voluntariness) and the likelihood, based upon the volume of business and its unlawful activity in the Commonwealth, that it may be subject to the jurisdiction of Massachusetts courts (foreseeability). Therefore, Plaintiff has sufficiently pled Bloomingdale's voluntary conduct and the foreseeability required to establish purposeful availment and personal jurisdiction.

### b.       Something More:  Knowledge and Intent

Plaintiff plausibly alleges that users from Massachusetts can assert personal jurisdiction and establish the "something more" required to extend personal jurisdiction over an out-of-state owner of a nationally accessible website.  *Lin v. TipRanks, Ltd.*, No. 19-cv-11517, 2019 WL

---

[7]       The Court may take judicial notice of the fact Bloomingdale's has store locations in Massachusetts and does not have store locations in all fifty states, as identified by the public website: www.bloomingdales.com.  *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003).

6211246, at *5, (D. Mass. Nov. 21, 2019).  To determine what "more" is required, courts consider whether the defendant actually and purposefully conducted transactions with forum state residents through its website, targeted residents in the forum, or knowingly made substantial revenue from forum state residents.  *Motus*, 520 F. Supp. 3d at 93.  Courts also consider whether the defendant knew "of both the existence of a potential victim and the victim's likely whereabouts," such as in *Motus*, where the court opined the "something more" element is satisfied by a defendant's intentional conduct calculated to cause injury in Massachusetts.  *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th. 115, 126 (1st Cir. 2022).  Intentional conduct occurs if the defendant knew of plaintiff's whereabouts, like Bloomingdale's did here, when it engaged in the tortious conduct.  *Id*; *see also Morphotrust USA, LLC v. Identrix, LLC*, No. 16-cv-10074, 2016 WL 3512131, at * 5 (D. Mass. June 21, 2016) (finding where a defendant knows the target of its allegedly wrongful conduct is located in Massachusetts, the purposeful availment prong is satisfied); *Edvisors Network, Inc. v. Educ. Advisors, Inc.*, 755 F. Supp. 2d 272, 284 (D. Mass. 2010) (finding knowledge that conduct would have a harmful effect on Edvisors in Massachusetts, and its efforts to market its services to residents of Massachusetts through the use of an interactive website satisfies purposeful availment).

 Bloomingdale's knew Plaintiff and the Class were located in Massachusetts and thus, intended to cause injury through its website in Massachusetts.  This is sufficient to establish "something more" for personal jurisdiction over the owner of a nationally accessible website and confers personal jurisdiction.

III.    **BLOOMINGDALE'S CONDUCT VIOLATES THE WIRETAP ACT AND IS AN INVASION OF PRIVACY**

A.    **Plaintiff Has Sufficiently Pled a Wiretap Claim**

1.    **Bloomingdale's Interception Occurred in Massachusetts**

The Massachusetts Wiretap Statute is one of the most restrictive in the nation.  Indeed, the Statute's purpose seeks to prohibit the "unrestricted use of modern electronic surveillance devices" because such devices "pose grave dangers to the privacy of all citizens."  MASS. GEN. LAWS ch. 272, §99(A).  Contrary to Defendant's argument, Plaintiff has sufficiently alleged that Defendant intercepted Plaintiff's communications.  Plaintiff alleged that while located within Massachusetts, he visited Defendant's website, Defendant embedded the Session Replay Code onto its website for the specific purpose of intercepting Plaintiff's activities without Plaintiff's consent, knowledge, or approval.  CAC, ¶¶1, 40, 43, 47, 82.  Bloomingdale's disputes that the interception of Plaintiff's communications occurred in Massachusetts because it argues that the receipt and recording of Plaintiff's Website Communications did not occur in Massachusetts.  Def.'s Mem. at 9.  However, Plaintiff clearly alleged that Defendant's Session Replay Code intercepted and recorded Plaintiff's *internet browser*, to receive recordings of Plaintiff's Website Communications which occurred while he was *physically located in Massachusetts*.  *See* CAC, ¶1 ("Bloomingdale's procures third-party vendors, such as FullStory, to embed snippets of JavaScript computer code ("Session Replay Code") on Bloomingdale's website, which then deploys on each *website visitor's internet browser*"); *see also* CAC, ¶¶10, 45.  "Session Replay Code works by inserting computer code into the various event handling routines that web browsers use to receive input from users, *thus intercepting the occurrence of actions the user takes*.  When a website delivers Session Replay Code to a user's browser, the browser will follow the code's instructions by sending responses in the form of 'event' data to a designated third-party server."  CAC, ¶25.  Bloomingdale's reliance

upon *Marquis v. Google*, No. 11-2808, 2015 WL 13037257 (Mass. Super. Feb. 13, 2015) and other cases[8], is misplaced. Those cases refer to factual situations where website communications were recorded *outside* of Massachusetts onto the third-party's server. Indeed, in *Marquis*, Google's Content Onebox technology was code running on servers *outside* of Massachusetts and *all* of Google's email scanning processes "are implemented on servers located outside of Massachusetts." *Id.*, at *2.

### 2.     Bloomingdale's Use of Session Replay Constitutes an Interception

Contrary to Bloomingdale's arguments, Plaintiff has alleged that Bloomingdale's use of Session Replay Code (the intercepting device) to record Plaintiff's Website Communications (contents of wire communications) was done without Plaintiff's knowledge (secret recording). CAC, ¶¶1, 40.

#### a.     Plaintiff Alleged Bloomingdale's Use of Session Replay Code Was "Secret"

Bloomingdale's argues that any "data collection" of Plaintiff's online activities was not secret and was otherwise disclosed to Plaintiff and the Class through Bloomingdale's privacy policy located on its website. Def.'s Mem. at 11. The secrecy inquiry thus "turns on notice, *i.e.*, whether, based on objective indicators [. . .] one can infer that the subject was aware that she might be recorded." *Glik v. Cunniffe*, 655 F.3d 78, 86–87 (1st Cir. 2011). Here, Plaintiff specifically alleged that he "did not consent to, authorize, or know about" Bloomingdale's use of Session Replay Code, and "never agreed that Bloomingdale's could collect or disclose [his] Website Communications." CAC, ¶91; *see also* ¶82 (Plaintiff "did not consent to having [his] Website

---

[8]     *Commonwealth v. Wilcox*, 63 Mass. App. Ct. 131, 139, 823 N.E.2d 808, 815 (2005), *aff'd*, 446 Mass. 61, 841 N.E.2d 1240 (2006), *Commonwealth v. Maccini*, No. 06-0873, 2007 WL 1203560 (Mass. Super. Apr. 23, 2007), and *MacNeill Eng'g Co. v. Trisport, Ltd.*, 59 F. Supp. 2d 199, 202 (D. Mass. 1999) do not provide proper guidance as they each do not discuss interceptions of website communications.

Communications wiretapped."); ¶47 ("**Unknown to Plaintiff**, Bloomingdale's procures and embeds Session Replay Code on its website"). At the pleading stage, where the Court must draw inferences in Plaintiff's favor, the Court cannot ignore Plaintiff's specific and reasonable allegations. *See Marquis*, 2012 WL 12929513, at *3 ("[T]he court accepts as true [Plaintiff]'s allegation that Google secretly intercepted her electronic communications with Gmail users."). The Court also cannot assume Plaintiff, or anyone, would be on notice of Bloomingdale's privacy statement, which is buried at the bottom of its website. Further, while the Court should disregard Bloomingdale's privacy statement as beyond the four corners of the complaint, *Marquis*, 2012 WL 12929513, at *3 ("Google's attempt to introduce documents outside the pleadings is improper at the motion to dismiss stage[]"), even if the Court were to consider Bloomingdale's privacy statement, it hardly provides the "clear and unequivocal objective manifestations of knowledge" required. *Commonwealth v. Jackson*, 349 N.E.2d 337, 340 (Mass. 1976). [9]

Defendant further argues its privacy policies were "expressly" disclosed such that "[a]ny visitor to Bloomingdale's website was therefore on notice[.]" Def.'s Mem. at 11. Bloomingdale's cannot baldly assert that any visitor to Bloomingdale's website was on notice of its wiretapping activities by pointing to the generic information that Bloomingdale's uses cookies, collects internet activity or may share your information. *See* Def.'s Mem. at 11; Def.'s Mem. Ex. 2, 6, 18; Ex. 3 at 2, 6; Ex. 4 at 2. While Bloomingdale's argues the privacy statement discloses that Bloomingdale's "collects…[i]nternet or other [n]etwork [a]ctivity [i]nformation…." and other certain information,

---

[9]      At most, Bloomingdale's privacy statement constitutes unenforceable browsewrap. "[W]here, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract. Whether a user has inquiry notice of a browsewrap agreement, in turn, depends on the design and content of the website and the agreement's webpage. Where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 574–75 (Mass. App. Ct. 2013), *aff'd*, 84 N.E.3d 766 (Mass. 2017).

Def.'s Mem. at 11 (brackets in original), the policy itself undermines any actual knowledge by later stating: "not all entities participate in all uses and collection [of personal information] described in this document."  Def.'s Mem., Ex. 3, at 1.  Moreover, disclosing the use of cookies and tracking technologies – generally used for advertisement placement – does not inform website visitors of the far more invasive practice Plaintiff alleges Bloomingdale's undertook here, namely, the surreptitious capture, recording, review, and analysis of all of Plaintiff's activities and actions on Bloomingdale's website.

On these facts, Plaintiff has sufficiently alleged a "secret" recording within the meaning of the Statute.  *Cf. Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 119 (W.D. Pa. 2019) ("Whether the agreement provided actual notice or inquiry notice are important questions of fact. . . .  The Court cannot determine if Defendants afforded Popa actual or inquiry notice without a more developed record and additional briefing.").

> **b.    Plaintiff's Website Communications Are Communications Containing Contents Under Massachusetts Law**

Under the Wiretap Statute, the term "'contents', when used with respect to any wire or oral communication, means any information concerning the identity of the parties to such communication or the existence, contents, substance, purport, or meaning of that communication." MASS. GEN. LAWS ch. 272, §99(B)(5).  Bloomingdale's argument that Website Communications are not "contents" of a "communication" (Def.'s Mem. at 11-12) ignores the plain meaning of the Wiretap Statute.  Indeed, in an effort to mischaracterize the scope of contents, Bloomingdale's cites to cases only analyzing the meaning of "contents" within "oral" communications.  *See Commonwealth v. Rivera*, 833 N.E.2d 1113, 1120 note 10 (Mass. 2005); *Curtatone v. Barstool Sports, Inc.*, 169 N.E.3d 480, 483 (Mass. 2021); *Commonwealth v. Gordon*, 666 N.E.2d 122, 134 (Mass. 1996).  Likewise, *Commonwealth v. Camilli*, 81 Mass. App. Ct. 1129 (2012) is not relevant

here because it stands only for the proposition that non-communicative communications, like a silent video of a public interaction, does not constitute an "oral communication" under the Wiretap Statute. *Camilli*, 81 Mass. App. Ct. 1129. ("The 'sting' video does not violate G.L. c. 272, §99, ***because no oral recording occurred***.")  Bloomingdale's other case fares no better. *See Hyde*, 434 Mass. at 595 ("G.L. c. 272, §99, strictly prohibits . . . any ***oral communication*** ….")  Thus, these cases have no bearing on the meaning of "contents" of a *wire* communication under the Wiretap Statute.

Bloomingdale's next argues that there was no "collection of the 'contents' of any communication." Def.'s Mem. at 13.  Massachusetts courts have emphasized both that "contents" under the Statute "is defined broadly," *Commonwealth v. Mejia*, 832 N.E.2d 693, 697 (Mass. 2005), and that there should be "no doubt that the plain language of the [S]tatute accurately states the Legislature's intent."  *Commonwealth v. Hyde*, 750 N.E. 2d 963, 966 (Mass. 2001); *see also Woo v. Spackman*, 988 F.3d 47, 51 (1st Cir. 2021) ("[C]ourts should strive to interpret statutes so that each word in the statutory text has meaning.").  In support of their argument, Defendant cites to *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1322 (S.D. Fla. 2021) that purportedly invokes an analogous statute.  The Wiretap Statute is, however, materially different from Florida Law.   Unlike the Wiretap Statute, Florida's Security of Communications Act ("FSCA") contains an express statutory exception from the definition of electronic communication such that it "does not include [. . .] [a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object." FLA. STAT. §934.02(12)(c); *see also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. 2021) (denying motion to dismiss under California law because no "similar exemption exists under CAL. PENAL CODE §631(a)").  Thus, the *Goldstein* case Bloomingdale's invokes provides no guidance for properly interpreting

the Wiretap Statute. *See Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *3 (Fla. Cir. Ct. June 17, 2021) ("Session replay software is thus **definitionally excluded** from the term 'electronic communications' in … the FSCA[]"); *Goldstein.*, 559 F. Supp. 3d at 1321 ("[T]he plain language of the statute exempts the sort of tracking that triggered this action[]"); *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546-CIV, 2021 WL 4093295, at *3 (S.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, No. 21-80546-CIV, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021) ("[T]he FSCA does not extend to the session replay software").

Unlike Florida law, Massachusetts courts have emphasized both that "contents" under the Wiretap Statute "is defined broadly," *Mejia*, 832 N.E.2d at 697, and that there should be "no doubt that the plain language of the [S]tatute accurately states the Legislature's intent." *Hyde*, 750 N.E. 2d at 966; *see also Woo v. Spackman*, 988 F.3d 47, 51 (1st Cir. 2021) ("[C]ourts should strive to interpret statutes so that each word in the statutory text has meaning.").

The Wiretap Statute expressly defines "contents" to include information concerning "the identity of the parties to such communication or the existence" of that communication. MASS. GEN. LAWS ch. 272, §99(B)(5). This definition casts a far broader sweep than other Federal or state statutes. *Compare Smith v. Maryland*, 442 U.S. 735, 741 (1979) (under Federal law, pen registers do not acquire "contents") *with Dist. Att'y for Plymouth Dist. v. New England Tel. & Tel. Co.*, 399 N.E.2d 866, 869–70 (Mass. 1980) (under Wiretap Statute, pen registers acquire contents, namely "'information concerning the identity of' a party to a communication and concerning 'the existence . . . of that communication'"). Massachusetts's Supreme Judicial Court has emphasized that these "differences between our statute and the Federal wiretap statute" are "meaningful," *id.*, and should not, as Bloomingdale's implies, be ignored. Plaintiff alleges that Bloomingdale's intercepts several types of content, including the collection of every keystroke, click, and mouse

movement, as well as URLs, location information (*i.e.*, IP addresses) and searches made by Plaintiff and the Class within Bloomingdale's website, CAC, ¶¶1, 10, 45, and can create "'fingerprints' that are unique to a particular user's combination of computer and browser settings, screen configuration, and other detectable information." *Id.*, ¶35.  Though Bloomingdale's questions "*what* information was allegedly collected", Def.'s Mem. at 14, Plaintiff plainly alleges: "While in Massachusetts, Plaintiff visited www.bloomingdales.com on his computer or cellphone" which he does "regularly, approximately once or twice a month" CAC, ¶45; *see also* ¶1 (alleging Bloomingdale's intercepts "mouse movements, clicks, [and] keystrokes (such as text being entered into an information field or text box)").  Drawing inferences in Plaintiff's favor, as the Court must at this stage, Plaintiff's "search" included entering keystrokes into Bloomingdale's website.  The recording of these keystrokes constitutes an interception of "contents."  *See Rich v. Rich*, No. BRCV200701538, 2011 WL 3672059, at *5 (Mass. Super. July 8, 2011) (The court held that because the key logger program installed recorded messages as they are typed, an interception occurred within the meaning of the Wiretap Statute).  The Session Replay Code at issue here, which intercepts and records, among other things, "keystrokes (such as text being entered into an information field or text box)," (CAC, ¶ 1), is thus analogous to the keylogger software in *Rich.* Even if Plaintiff's search was conducted entirely by clicks and mouse movements, however, because the purpose of those acts was to online shop, such acts constitute "information concerning the . . . contents . . . of that communication," Mass. Gen. Laws ch. 272, §99(B)(5), and thus constitutes an interception of "contents" under the Statute.  *See*, *Rich*, 2011 WL 3672059, at *6; *see also Byars v. Goodyear Tire & Rubber Co.*, No. 522CV01358SSSKKX, 2023 WL 1788553, at *4 (C.D. Cal. Feb. 3, 2023).

### c.  Session Replay Code Constitutes an Intercepting Device

The Wiretap Statute broadly defines "intercepting device" to include "***any device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication***." MASS. GEN. LAWS ch. 272, §99(B)(3).  Nevertheless, citing non-Massachusetts authority, Bloomingdale's argues that the Wiretap Statute's reference to "device" or "apparatus" excludes software because it is not a "device" or "apparatus" that is "*tangible.*"  Def.'s Mem. at 14.  Massachusetts law is clear that software that can log keystrokes, which is even more elementary than the Session Replay Code at issue here, is an "intercepting device" because it "is capable of ... recording a wire ... communication."  *Rich*, 2011 WL 3672059, at *6 (ellipses in original); *accord Popa*, 426 F. Supp. 3d at 116-17; *Makkinje v. Extra Space Storage, Inc.*, No. 8:21-CV-2234, 2022 WL 80437, at *2 (M.D. Fla. Jan. 7, 2022) ("software can constitute a 'device' in the wiretapping context").  These cases are hardly outliers.  "The majority of courts to consider this issue have entertained the notion that software may be considered a device for the purposes of the Wiretap Act."  *U.S. v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases).  Bloomingdale's reliance upon *Potter v. Havlicek*, No. 3:06-CV-211, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) for the proposition that software "alone cannot be used to intercept communications" is wrong.  That court did not cite to *any* cases in support of its conclusion, and is seemingly alone with its interpretation.  Indeed, the majority of courts to consider whether software can constitute a device have agreed with Plaintiff's position.  *See Luis v. Zang*, 833 F.3d 619, 630 (6th Cir. 2016) (accepting that a software could be a "device" for the purpose of the Wiretap Act); *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1084 (N.D. Cal. 2015) (concluding that a software was an "electronic, mechanical or other device"); *Klumb v. Goan*, 884 F.Supp.2d 644, 661–62 (E.D. Ten. 2012) (analyzing spyware software as a device under the Wiretap Act); *Rene v. G.F. Fishers, Inc.*, 817 F.Supp.2d 1090, 1094 (S.D. Ind. 2011) (holding that keystrokes are not

17

electronic communications for the purpose of the Wiretap Act, but accepting the notion that software could be a device); *Shefts v. Petrakis*, No. 10-cv-1104, 2012 WL 4049484, at *8–9 (C.D. Ill. 2012) (analyzing software as a device under the Wiretap Act).  Thus, Plaintiff has plausibly alleged that Session Replay Code constitutes as an intercepting device.

### B.     Plaintiff Has Pled an Invasion of Privacy Claim

MASS. GEN. LAWS ch. 214, §1B provides, "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy."  Bloomingdale's argues (1) it did not "gather[] or disseminat[e] of private facts," Def.'s Mem. at 16 (without merit)[10], and (2) its' collection and sharing of Plaintiff's data was not "unreasonable, substantial, or serious interference," *id.*[11], and therefore Plaintiff's invasion of privacy claim must fail.  *Id.*  Defendant is incorrect as a matter of law.

To assess whether there has been an intrusion that is unreasonable and substantial, or serious, Massachusetts courts examine: (1) location of the intrusion (here Massachusetts), (2) means used (here secretly employing Session Replay Code), (3) frequency and duration of the intrusion (here every time for the entire duration of the website visit and recording *every* piece of information Plaintiff provided (intentionally or not) while on www.bloomingdales.com), and (4) underlying purpose behind the intrusion (here, money and sales for Bloomingdale's).  *Polay v. McMahon*, 468 Mass. 379, 383 (2014); *see also McLaughlin v. Meehan*, No. 1681CV00866, 2018

---

[10]     The cases Bloomingdale's cites are clearly distinguishable as the information alleged therein was either publicly available or non-private information.  Thus, these cases are inapposite and this argument is not supported.  *See Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015) (defendant disclosed name, home address, and employer), *Philbrook v. Perrigo*, 637 F. supp. 2d 48, 55 (D. Mass. 2009) (defendant disclosed a mugshot), and *French v. United Parcel Serv., Inc.*, 2 F. Supp. 2d 128, 131 (D. Mass. 1998) (defendant disclosed incident where multiple employees observed the event).

[11]     Defendant's factual arguments are inappropriate for a motion to dismiss because the reasonableness of Bloomingdale's alleged intrusion of Plaintiff's privacy is a fact question.  *McLaughlin v. Meehan*, No. 1681CV00866, 2018 WL 1041371, at *10 (Mass. Super. Jan. 19, 2018); *see also Cook v. WHDH-TV, Inc.*, No. 941269, 1999 WL 1327222, at *5 (Mass. Super. Mar. 4, 1999).

WL 1041371, at *10 (Mass. Super. Jan. 19, 2018) (finding the reasonableness inquiry to require balancing "extent to which the defendant violated the plaintiff's privacy interests against any legitimate purpose the defendant may have had for the intrusion.").   These factors support Plaintiff's claim for invasion of privacy.

Bloomingdale's secretly recorded, collected, and shared *every fact* (regardless of content or sensitivity) Plaintiff submitted (intentionally or not) on bloomingdales.com, including Plaintiff's partial submissions (trains of thought), cursor movements, zoom-ins, snipping, copying, and sharing, and may have tracked other sensitive data provided to Bloomingdale's while on www.bloomingdales.com.   CAC, ¶¶1, 18, 24.   Bloomingdale's collected this data in real-time, non-stop for the duration of Plaintiff's visit and did so for its own monetary benefit.   *Id.*, ¶¶1, 13-15, 87, 93.   This is intensely personal, and highly invasive tracking.   *McLaughlin*, 2018 WL 1041371, at *10; *see In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 604 note 7 (9th Cir. 2020) ("[I]ndividuals maintain the expectation that entities will not be able to collect such broad swaths of personal information absent consent.").

Thus, the specific facts Bloomingdale's collected are not nearly as important as "*how* [defendant] accomplished its tracking" and its blatant disregard for Plaintiff's privacy.   *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 292 (3d Cir. 2016) (finding defendant's behavior to be highly offensive); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 151 (3d Cir. 2015) (finding defendant's conduct "highly offensive" where the defendant's conduct was surreptitious).   The act of concealing oneself for purposes of surreptitiously wiretapping someone, combined with the unfiltered, non-stop recording in real-time every time someone visits Bloomingdale's website *is* highly offensive conduct.   *see United States v. Moore-Bush*, 36 F.4th 320, 337 (1st Cir. 2022) (concurrence) (*citing Wolfson v. Lewis*,

924 F. Supp. 1413, 1434 (E.D. Pa. 1996) (the nonstop "videotaping and recording" of the plaintiffs' home made them "prisoners" in their own home and amounted to "hounding" that constituted an "invasion of privacy" sufficient to support finding that the filming was a tort)). Additionally, Bloomingdale's has not identified a legitimate purpose for unfettered behavior tracking that would outweigh Plaintiff's privacy interests.  Together, the factors support Plaintiff's invasion of privacy claim.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should deny Bloomingdale's Motion in its entirety.[12]

Dated: March 7, 2023

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo (BBO #671410)
Carey Alexander
Ethan S. Binder
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Fl.
New York, NY 10169
Tel.: (212) 223-6444
jguglielmo@scott-scott.com
calexander@scott-scott.com
ebinder@scott-scott.com

Brian C. Gudmundson
Michael J. Laird
Rachel K. Tack
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel.: (612) 341-0400
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.con
rachel.tack@zimmreed.com

*Counsel for Plaintiff*

---

[12]     If the Court determines the pleadings are deficient in any respect, Plaintiff requests leave to amend to cure any deficiencies.  *See Green v. Cosby*, 99 F. Supp. 3d 223, 225 (D. Mass. 2015) ("Leave to amend a complaint should be freely given").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 7, 2023.

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo (BBO #671410)
*Attorney for Plaintiff*