# Exhibit A

2023 WL 4567096
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

Erika MIKULSKY, individually and on behalf of all others similarly situated, Plaintiff,
v.
NOOM, INC., Defendant.

Case No.: 3:23-cv-00285-H-MSB
|
Signed July 17, 2023

**Attorneys and Law Firms**

James Pizzirusso, Pro Hac Vice, Hausfeld LLP, Washington, DC, Steven Nathan, Hausfeld LLP, New York, NY, Thomas M. Beh, Pro Hac Vice, Murray Law Firm, New Orleans, LA, for Plaintiff.

Aarti Reddy, Kyle Christopher Wong, Michael G. Rhodes, Cooley LLP, San Francisco, CA, David Scott Louk, San Francisco City Attorney's Office, San Francisco, CA, Christina Jensen, Cooley LLP, San Diego, CA, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

MARILYN L. HUFF, District Judge

 *1 On May 8, 2023, Defendant Noom, Inc. filed a motion to dismiss Plaintiff Erika Mikulsky's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (Doc. No. 12.) On June 5, 2023, Plaintiff filed a response in opposition to Defendant's motion to dismiss. (Doc. No. 17.) On June 13, 2023, the Court issued an order directing the parties to file supplemental briefing to address Plaintiff's Article III standing in light of the Court's order in Lightoller v. Jetblue Airways Corporation, No. 23-cv-00361-H-KSC, Doc. No. 18, Order Granting Motion to Dismiss, 2023 WL 3963823 (S.D. Cal. June 12, 2023). (Doc. No. 21.) On June 16, 2023, Defendant filed a reply in support of its motion. (Doc. No. 22.) On June 26, 2023, both Plaintiff and Defendant filed supplemental briefing in accordance with the Court's June 13 order. (Doc. Nos. 23, 24.)

The Court, pursuant to its discretion under Civil Local Rule 7.1(d)(1), determines the matter is appropriate for resolution without oral argument and submits the motion on the parties' papers. For the reasons below, the Court grants Defendant's motion to dismiss.

### Background

Defendant is a Delaware corporation that has its principal place of business in New York. (Doc. No. 1, Compl. ¶ 6.) Defendant is a digital health and wellness platform that focuses on helping individuals lose weight and lead healthier lives. (Id. ¶ 42.) Defendant operates the website, www.noom.com (the "Website"). (Id.) Defendant procures and embeds various Session Reply Code – from third-party Session Reply Providers, including FullStory – on Defendant's website to track and analyze website user interactions with the Website. (Id. ¶¶ 43-44.)

Session Replay Code enables website operators to record, save, and replay a website visitor's interactions with a given website, including "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time." (Id. ¶¶ 1, 22; see also id. ¶¶ 24-25.) Once the events have been recorded by a Session Replay Code, a website operator can view a visual reenactment of the user's visit through the Session Replay Provider, usually in the form of a video. (Id. ¶ 27.)

Plaintiff visited Defendant's website to "browse[ ] for different products for sale." (Id. ¶ 51.) Plaintiff used "her mouse to hover and click on certain products and services" and typed "her personal information into text fields." (Id.) During her visit, Plaintiff's communications were captured by Session Replay Code and sent to various Session Replay Providers. (Id. ¶ 53.) Plaintiff alleges that Defendant's conduct violates the California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 et seq., and constitutes the tort of invasion of privacy rights and intrusion upon seclusion. (Id. ¶ 3.)

On February 14, 2023, Plaintiff filed a class action complaint against Defendant, alleging claims for: (1) violation of CIPA; and (2) invasion of privacy – intrusion upon seclusion. (Id. ¶¶ 72-97.) By the present motion, Defendant moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 12-1 at 6-21.) The Court

also sua sponte asked the parties to address Plaintiff's Article III standing under Federal Rule of Civil Procedure 12(b)(1). (Doc. No. 21.) Defendant moved to dismiss Plaintiff's complaint on that ground as well. (Doc. No. 24.)

## Discussion

**\*2** Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) to dismiss Plaintiff's complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim, [1] respectively. (Doc. No. 12 at 6-10, 11-25; Doc. No. 24 at 4-9.) Specifically, Defendant argues that Plaintiff's claims should be dismissed because Plaintiff failed to establish that she suffered an injury in fact and thus lacks standing to bring her claims and because the Court lacks personal jurisdiction over Defendant. (See id.)

### I. Legal Standards

#### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims for lack of subject matter jurisdiction. "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

Here, Defendant's Rule 12(b)(1) briefing focuses solely on the allegations in Plaintiff's complaint, and, thus, Defendant makes a facial attack under Rule 12(b)(1). (See Doc. No. 24 at 4-9.) "In deciding a Rule 12(b)(1) facial attack motion, a court must assume the facts alleged in the complaint to be true and construe them in the light most favorable to the nonmoving party." Strojnik v. Kapalua Land Co. Ltd., 379 F. Supp. 3d 1078, 1082 (D. Haw. 2019) (citing Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)); see Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty., 343 F.3d 1036, 1039 (9th Cir. 2003); Rimac v. Duncan, 319 F. App'x 535, 536 (9th Cir. 2009).

#### B. Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), a complaint may be dismissed for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." Dow Chemical Co. v. Calderon, 422 F.3d 827, 830 (9th Cir. 2005) (quoting Chan v. Society Expeditions, 39 F.3d 1398, 1404-05 (9th Cir. 1994)). California's long-arm statute states that a court "may exercise jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." Cal. Civ. Proc. Code § 410.10. Thus, California's long-arm statute permits courts to exercise personal jurisdiction within the limits of due process. Daimler AG v. Bauman, 571 U.S. 117, 125, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014).

Under the Fourteenth Amendment's Due Process Clause, courts may exercise personal jurisdiction over any defendant who has sufficient "minimum contacts" with the forum that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There are two bases for exercising personal jurisdiction over a non-resident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's contacts with the forum give rise to the claim in question. See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

**\*3** "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." Daimler AG v. Bauman, 571 U.S. 117, 137, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (internal quotations omitted). Courts are limited to exercising general jurisdiction in forums where the corporation has continuous and systemic contacts, such that it is essentially at home. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011).

For specific jurisdiction, the Ninth Circuit uses a three-part test to determine if a defendant's contacts with the forum state are sufficient. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). Under that test:

> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

Boschetto, 539 F.3d at 1016; see also Myers v. Bennett Law Offices, 238 F.3d 1068, 1072 (9th Cir. 2001); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).

The plaintiff bears the burden of establishing personal jurisdiction. Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014); Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008) ("In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper"). "[T]he plaintiff need only make a prima facie showing of jurisdictional facts." Glob. Commodities Trading Grp. v. Beneficio de Arroz Choloma, S.A., 972 F.3d 1101, 1106 (9th Cir. 2020) (citations omitted). To make a "prima facie showing," the plaintiff needs to show facts that, if true, would support jurisdiction over the defendant. Lindora, LLC v. Isagenix Int'l, LLC, 198 F. Supp. 3d 1127, 1135 (S.D. Cal. 2016). To determine if a plaintiff met his burden, "uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588-89 (9th Cir. 1996) (quoting WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)).

## II. Analysis

### A. Subject Matter Jurisdiction

In Defendant's supplemental briefing, Defendant argues that Plaintiff lacks Article III standing to bring her claims in this action. (Doc. No. 24 at 4-9). Specifically, Defendant asserts that Plaintiff failed to adequately allege that she suffered an injury in fact. (Id.) In response, Plaintiff asserts that she sufficiently alleges an injury in fact based on the allegation that she "typ[ed] her personal information in text fields" into Defendant's Website. (Doc. No. 23 at 1, 7; see also Compl. ¶ 51.)

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" TransUnion LLC v. Ramirez, ––– U.S. ––––, 141 S. Ct. 2190, 2203, 210 L.Ed.2d 568 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." Id.

**\*4** "[T]he 'irreducible constitutional minimum' of standing consists of three elements." Spokeo, Inc. v. Robins, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion, 141 S. Ct. at 2203 (citing Lujan, 504 U.S. at 560–61, 112 S.Ct. 2130). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Spokeo, 578 U.S. at 338, 136 S.Ct. 1540. Further, " '[t]hat a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.' " Id. at 338 n. 6, 136 S.Ct. 1540 (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)); accord Lewis v. Casey, 518 U.S. 343, 357, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

To establish the first element of standing, "injury in fact," "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " Spokeo, 578 U.S. at 339, 136 S.Ct. 1540 (citing Lujan, 504 U.S. at 560, 112 S.Ct. 2130). "A "concrete" injury must be 'de facto'; that is, it must actually exist." Id. at 340, 136 S.Ct. 1540. A concrete injury must be "real" and not "abstract." Id.

"[C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms." TransUnion, 141 S. Ct. at 2204. "Various intangible harms can also be concrete." Id.; see Spokeo, 578 U.S. at 340, 136 S.Ct. 1540. "Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts[,] ... for example, reputational harms, disclosure of private information, and intrusion upon seclusion." TransUnion, 141 S. Ct. at 2204.

Importantly, " 'Article III standing requires a concrete injury even in the context of a statutory violation.' " TransUnion, 141 S. Ct. at 2205 (quoting Spokeo, 578 U.S. at 341, 136 S.Ct. 1540). The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.' " Id. A legislature's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III. Id. "[U]nder Article III, an injury in law is not an injury in fact." Id.

In the privacy context, the Ninth Circuit "has stated that 'violations of the right to privacy have long been actionable at common law,' and CIPA 'codif[ies] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.' " Byars v. Sterling Jewelers, Inc., No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (quoting In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 599 (9th Cir. 2020)). But, the Ninth Circuit has also clarified that the right to privacy encompasses an " 'individual's control of information concerning his or her person.' " Facebook, 956 F.3d at 598 (quoting Eichenberger v. ESPN, Inc., 876 F.3d 979, 983 (9th Cir. 2017)); see U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press, 489 U.S. 749, 763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."). The Supreme Court then explained that for there to be a concrete harm, the alleged injury must bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "disclosure of private information" and "intrusion upon seclusion." TransUnion, 141 S. Ct. at 2204.

**\*5** Here, Plaintiff argues that she has adequately alleged a concrete harm as a result of inputting "her personal information in text fields." (Doc. No. 23 at 1, 7; see also Doc. No. 1 ¶ 51.) Specifically, Plaintiff asserts that she has "alleged an intangible concrete harm," namely, "an invasion of her privacy" because she typed her "personal information" into Defendant's Website. (Doc. No. 23 at 7-8.) Courts, however, "make their decisions regarding whether a plaintiff has stated a legally protectable privacy interest based on the nature of the information at issue." In re Yahoo Mail Litig., 7 F.Supp.3d 1016, 1040 (N.D. Cal. 2014); see also Norman–Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1271 n. 17 (9th Cir. 1998) ("Under California law, a legally recognizable privacy interest arises from the sort of information revealed[.]"). To survive a motion to dismiss, a plaintiff must identify the "specific personal information she disclosed that implicates a protectable privacy interest." See, e.g., Byars, 2023 WL 2996686, at *3 (dismissing a CIPA claim because the plaintiff had not identified the personal information she disclosed and therefore had not established any harm to her privacy); Facebook, 956 F.3d at 598–99 (explaining that a right to privacy "encompasses the individual's control of information concerning his or her person" and is violated when the defendant "reveal[s] an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives").

Plaintiff's conclusory allegation that she disclosed "personal information" does not allow the Court to determine whether

Plaintiff has a protectable privacy interest in that information. See Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987) (A court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations") (citation omitted). For example, if Plaintiff disclosed her basic contact information, such as her email address or phone number, courts have found that type of information does not bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. See, e.g., I.C. v. Zynga, Inc., 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022). Without more, the Court is unable to determine whether the "personal information" Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest. Accordingly, Plaintiff's allegation is insufficient to allege a concrete harm that is required for Article III standing. See e.g., Byars, 2023 WL 2996686, at *3 (granting motion to dismiss because "[p]laintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy."); Armstrong v. Allied Insurance Co., No. 14-cv-0424-JGB, 2014 WL 12591844, at *6-7 (C.D. Cal. Aug. 19, 2014) (granting motion to dismiss because the plaintiff did not identify the specific type of personal information that the defendants allegedly accessed).

Plaintiff relies on In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589 (9th Cir. 2020) to argue that she has adequately alleged an injury in fact. (Doc. No. 24 at 5-8.) Plaintiff's reliance on Facebook is not persuasive. In Facebook, the Ninth Circuit held that the plaintiffs had adequately alleged harm to their interest in controlling their personal information based on the following allegations:

> Plaintiffs alleged that Facebook continued to collect their data after they had logged off the social media platform, in order to receive and compile their personally identifiable browsing history. As alleged in the complaint, this tracking occurred "no matter how sensitive" or personal users' browsing histories were. Facebook allegedly constantly compiled and updated its database with its users' browsing activities, including what they did when they were not using Facebook. According to Plaintiffs, by correlating users' browsing history with users' personal Facebook profiles—profiles that could include a user's employment history and political and religious affiliations—Facebook gained a cradle-to-grave profile without users' consent.

**\*6** Here, Plaintiffs have adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information. As alleged, Facebook's tracking practices allow it to amass a great degree of personalized information. Facebook's user profiles would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives.

Facebook, 956 F.3d at 598–99. Facebook involved the tracking and collecting of sensitive personal information, including the individuals' likes, dislikes, and habits. Id. In contrast, in this case, Plaintiff alleges that Defendant recorded her "personal information" without specifying what type of information. Plaintiff's lone conclusory allegation stands in stark contrast to the sea of specific personal information collected in Facebook and is therefore insufficient to establish a concrete injury for Article III standing. See Norman–Bloodsaw, 135 F.3d at 1271 n. 17; see also Byars, 2023 WL 2996686, at *3 (finding the Ninth Circuit's decision in Facebook distinguishable).

In sum, Plaintiff's conclusory allegation is insufficient to establish that she suffered a concrete harm. Norman–Bloodsaw, 135 F.3d at 1271 n. 17; see also Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998) ("[C]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss.") Accordingly, Plaintiff has failed to satisfy the injury in fact element for Article III standing. Because Plaintiff lacks standing, the Court must dismiss Plaintiff's claims for lack of subject matter jurisdiction. See Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction.").

### B. Personal Jurisdiction

Plaintiff bears the burden to show that the Court has either general personal jurisdiction or specific personal jurisdiction

over Defendant. Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008).

i. General Jurisdiction

Plaintiff fails to establish that the Court has general jurisdiction over Defendant. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." Daimler AG v. Bauman, 571 U.S. 117, 137, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (internal quotations omitted). A defendant's contacts must be so "continuous and systematic as to render [them] essentially at home in the forum state." LNS Enterprises LLC v. Cont'l Motors, Inc., 22 F.4th 852, 859 (9th Cir. 2022).

Here, Plaintiff argues that because Defendant is registered to do,[2] and does, business in California, Defendant's contacts meet the high threshold for general jurisdiction. (Doc. No. 17 at 5-7.) Plaintiff is mistaken. Both the Supreme Court and the Ninth Circuit specifically addressed and rejected Plaintiff's argument "that general jurisdiction is appropriate whenever a corporation 'engages in a substantial, continuous, and systematic course of business' in a state." Martinez v. Aero Caribbean, 764 F.3d 1062, 1070 (9th Cir. 2014) (citing Daimler, 571 U.S. at 138, 134 S.Ct. 746). Additionally, because Defendant is a Delaware corporation with a principal place of business in New York, Defendant is not "at home" in California. Daimler, 571 U.S. at 137, 134 S.Ct. 746. Thus, the Court does not have general jurisdiction over Defendant. The Court's analysis proceeds to whether specific jurisdiction is proper.

ii. Specific Jurisdiction

*7 Plaintiff also fails to establish that the Court has specific jurisdiction over Defendant. When a plaintiff's claims sound in tort,[3] the Ninth Circuit applies the purposeful direction test. See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) ("We have typically treated "purposeful availment" somewhat differently in tort and contract cases. In tort cases, we typically inquire whether a defendant "purposefully direct[s] his activities" at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt ...."). The purposeful direction test requires a plaintiff to show that the defendant has "(1) committed an intentional act, (2), expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 803 (9th Cir. 2004). To satisfy the test, courts look at whether the forum state was the "focal point both of the [defendant's action] and of the harm suffered." Axiom Foods, Inc. v. Acerchem International, Inc., 874 F.3d 1064, 1070–71 (9th Cir. 2017); see also Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156 (9th Cir. 2006) (the determinative question is whether a defendant's conduct was "expressly aimed at California").

Plaintiff argues that specific jurisdiction is proper because Defendant "intentionally operates its business in California through its interactive website." (Doc. No. 17 at 8; Compl. ¶ 8.) The Ninth Circuit utilizes a sliding scale to determine whether a website provides grounds for personal jurisdiction. See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418-19 (9th Cir. 1997). The sliding scale focuses on the "level of interactivity and commercial nature of the exchange ... that occurs on the Website." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1227 (9th Cir. 2011) (citation omitted). "Maintenance of a passive website alone" cannot not satisfy the purposeful direction test. See Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010). There must be "something more—conduct directly targeting the forum." Mavrix Photo, Inc., 647 F.3d at 1229 (internal quotation and citation omitted); see also Massie v. Gen. Motors Co., No. 1:20-cv-01560-JLT, 2021 WL 2142728, at *3 (E.D. Cal. May 26, 2021) (granting motion to dismiss CIPA claim because the plaintiff's "allegations regarding [d]efendants' website are insufficient to establish an express aim at California" even where the website was readily accessible by California residents).

The court's decision in Massie is directly on point. In Massie, the defendant operated a website that was "accessible throughout the United States, not just in California" and the session replay software that the defendant used recorded a "random selection of website sessions from users nationwide." Massie, 2021 WL 2142728, at *4. To try and allege specific jurisdiction, the plaintiff, in her first amended complaint, alleged that "[the defendant] knew and foresaw

that wiretapping would impact Californians because they " 'form a significant potion of [the defendant's] customer base.' " Id. at \*5. The Massie court noted that "mere foreseeability that someone may be harmed in the forum state does not suffice to confer specific personal jurisdiction." Id. (citing Walden v. Fiore, 571 U.S. 277, 289, 134 S.Ct. 1115, 188 L.Ed.2d 12). The Massie court then reasoned that because the website did not contain any interactive features targeting California customers or contain anything specifically targeting California, there was "no specific jurisdiction here." Id. at \*6. In conclusion, the Massie court held that the defendant's "operation of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction." Id. Such is the case here.

\*8 Here, Plaintiff's allegations fail to show conduct directly targeting the forum state. Notably, Plaintiff's complaint contains no allegations alleging how Defendant aimed any of its business at California. (See Compl.) Instead, similar to the plaintiff in Massie, Plaintiff generally alleges that Defendant "knows that many users visit and interact with Noom's website while they are physically present in California" and Defendant "knew that its practices would directly result in collection of information from California citizens." (Id. ¶¶ 8, 9.) Plaintiff also summarily argues that the "something more" required to satisfy the purposeful direction test is the "interactive website operated by Noom."[4] (Doc. No. 17 at 9.) But, Plaintiff fails to include a single allegation detailing how Defendant's "interactive website" is targeted at California. (See Compl.) For example, there are no allegations detailing the level of interactivity of Defendant's website. (Id.) There are no allegations regarding whether Defendant's use of Session Replay Code specifically targets California users. (Id.) And there are no allegations showing that the Website specifically targets Californians. (Id.) Plaintiff has therefore fallen far short of her requirement to establish that specific jurisdiction is proper here. See, e.g., Massie, 2021 WL 2142728, at \*3; Licea v. Caraway Home Inc., No. 22-cv-1791-JGB, ––– F.Supp.3d ––––, –––– – ––––, 2023 WL 1999496, at \*7-10 (C.D. Cal. Feb 9. 2023) (granting motion to dismiss CIPA claim where the plaintiff's complaint was devoid of any allegations relating to the purposeful direction test).

Additionally, Defendant contends that Plaintiff does not, and cannot, allege any facts that her claims "arise out of or relate to" Defendant's conduct in California. (Doc. No. 12-1 at 9-10.) Specifically, Defendant asserts that Plaintiff's claims arise from Session Replay Code installed on its nationally accessible Website from a company, Fullstory, that has no alleged ties to California. (Id. at 10.) In response, Plaintiff reiterates that because Defendant has California customers and those California customers have had their communications intercepted, then "Plaintiff's claims arise out of Defendant's contacts with California." (Doc. No. 17 at 10.) Notably, this section of Plaintiff's opposition does not cite to a single allegation in the Complaint. (Id. at 9-10.) "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty., 582 U.S. 255, 255, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017). Plaintiff's conclusory allegations fail to show any connection between Defendant's forum related contacts and the harm she allegedly suffered. Corrothers, 812 F.2d at 1177; see also Pareto, 139 F.3d at 699. Accordingly, Plaintiff has insufficiently alleged that her claims arise out of or relate to Defendant's forum specific conduct. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

Thus, the Court also does not have specific jurisdiction over Defendant. Accordingly, because the Court has neither general jurisdiction nor specific jurisdiction over Defendant, the Court dismisses Plaintiff's claims for lack of personal jurisdiction. See Yih v. Taiwan Semiconductor Manufacturing Co., Ltd., 857 Fed.Appx. 318, 319 (9th Cir. 2021).

## Conclusion

\*9 For the reasons above, the Court grants Defendant's motion to dismiss. The Court dismisses Plaintiff's complaint with leave to amend for lack of subject matter jurisdiction and for lack of personal jurisdiction over Defendant. See Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). The Court questions whether Plaintiff can cure the deficiencies cited here and Plaintiff is cautioned that if her first amended complaint does not cure these deficiencies, the Court may dismiss Plaintiff's claims with prejudice and without leave to amend. To the extent that Plaintiff wishes to amend her complaint, she may do so by filing a motion for leave to amend by **August 7, 2023**.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2023 WL 4567096

## Footnotes

| | |
|---|---|
| 1 | Because the Court grants Defendant's motion to dismiss on subject matter jurisdiction and personal jurisdiction grounds, the Court declines to reach the question of whether Plaintiff states a claim for relief. |
| 2 | Plaintiff requests that the Court take judicial notice of: (1) a California Secretary of State business search; and (2) a California Secretary of State statement of information for a corporation. (Doc. No. 17 at 6 fn. 2; Doc No. 17-1, Exhibits 1 and 2 to Declaration of Thomas M. Beh.) For the purposes of taking judicial notice, public records and government documents are generally considered "not to be subject to reasonable dispute," including "[p]ublic records and government documents available from reliable sources on the Internet." [Hansen Beverage Co. v. Innovation Ventures, LLC](), No. 08-CV-1166-IEG, 2009 WL 6597891, at *1 (S.D. Cal. Dec. 23, 2009). Accordingly, the Court grants Plaintiff's request for judicial notice. See [L'Garde, Inc. v. Raytheon Space and Airborne Systems](), 805 F. Supp. 2d. 932, 937–38 (C.D. Cal. 2011) (granting request for judicial notice of the "results of records searches form the Secretary of State for the State of California"). |
| 3 | Here, Plaintiff's claims sound in tort because Plaintiff did not enter into a contract for a sale of a good with Defendant. (See Compl.) Plaintiff visited Defendant's Website, browsed its' webpages, and typed her personal information into text fields. (Id. ¶ 51.) |
| 4 | Plaintiff included in a footnote in her opposition two articles relating to Defendant. (Doc. No. 17 at 9 fn. 3.) The first article is an advertisement that Noom took out in the Los Angeles Times that discusses "Noom Weight!" a platform aimed at helping users reach their weight-loss goals. Here's How Noom Weigh Helps You Lose Weight, THE LOS ANGELES TIMES, https://www.latimes.com/b2bpublishing/story/2022-07-13/heres-how-noom-weight-helps-you-lose-weight (last visited July 10, 2023). The second article discusses another platform called "Noom Med" that will initially be available "in 32 states, including New York, Texas, and California." Health startup Noom is now adding Ozempic and other weight loss injectables to its offerings, says 'outcomes are so much better, FORTUNEWELL, https://fortune.com/well/2023/05/24/noom-med-weight-loss-injectables-ozempic-wegovy-mounjaro/ (last visited July 10, 2023). Plaintiff's unrelated two articles are insufficient to establish specific jurisdiction. See [Axiom Foods, Inc. v. Acerchem International, Inc.](), 874 F.3d 1064, 1071 (9th Cir. 2017). |

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.