# United States Court of Appeals
## For the First Circuit

---

No. 23-1683

SCOTT ROSENTHAL,

Plaintiff, Appellant,

v.

BLOOMINGDALES.COM, LLC,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Gelpí, Selya, and Thompson,
Circuit Judges.

---

Jamisen A. Etzel, with whom Lynch Carpenter, LLP, Brian C. Gudmundson, Rachel K. Tack, Zimmerman Reed LLP, Joseph P. Guglielmo, Carey Alexander, Ethan S. Binder, and Scott+Scott Attorneys at Law LLP were on brief, for appellant.

Mark W. Mosier, with whom Emily Johnson Henn, Eric C. Bosset, Kendall T. Burchard, Grace Pyo, and Covington & Burling LLP were on brief, for appellee.

---

May 9, 2024

---

**SELYA, Circuit Judge.** The prevalence of various software applications in modern commercial life has given rise to a host of novel legal questions. This appeal poses a jurisdictional question of that genre. Concluding, as we do, that the district court appropriately determined that specific personal jurisdiction over the defendant was lacking in the forum state notwithstanding the defendant's use of session replay code (SRC), we affirm the district court's dismissal of the action for want of jurisdiction.

**I**

We briefly rehearse the relevant facts and travel of the case. Given that this appeal follows the district court's grant of a motion to dismiss for want of personal jurisdiction based on a prima facie record, we "take the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts" and embracing "undisputed facts put forth by the defendant." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).

Plaintiff-appellant Scott Rosenthal is a resident and citizen of Massachusetts. Defendant-appellee Bloomingdales.com, LLC (Bloomingdales) is an Ohio limited liability company with its principal place of business in New York. The sole member of Bloomingdales is Bloomingdale's, LLC, of which the sole member is

Macy's Retail Holdings, LLC (Macy's RH). In turn, the sole member of Macy's RH is Macy's, Inc., a Delaware corporation that maintains its principal place of business in New York.

On November 15, 2022, the plaintiff filed a putative class action in the United States District Court for the District of Massachusetts alleging that Bloomingdales had unlawfully intercepted and used information about his activity on its website. According to the plaintiff's complaint, the plaintiff regularly visited Bloomingdales' website, including while in Massachusetts. Bloomingdales, the complaint alleged, had commissioned third-party vendors (sometimes called "session replay providers" or "SRPs"), such as the Georgia-based company FullStory, to embed snippets of JavaScript computer code on its website. Unbeknownst to the plaintiff, this SRC was deployed onto his internet browser while he visited Bloomingdales' website in order to intercept, record, and map his electronic communications with the website. Bloomingdales and the SRPs then used these communications to recreate the plaintiff's visits to the website and to assemble for analysis a video replay of his behavior on the website. By secretly "looking over [his] shoulder," the plaintiff's complaint alleged, Bloomingdales transgressed both the Massachusetts Wiretapping Act, Mass. Gen. Laws ch. 272, § 99, and the Massachusetts Invasion of Privacy Statute, Mass. Gen. Laws ch. 214, § 1.

On August 11, 2023, the district court, ruling on a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(2), dismissed the plaintiff's complaint for lack of specific personal jurisdiction over Bloomingdales. See Rosenthal v. Bloomingdale's, Inc., No. 22-11944, 2023 WL 5179506, at *3 (D. Mass. Aug. 11, 2023). In addition to concluding that the "defendant's conduct which forms the basis of plaintiff's claims occurred outside of Massachusetts," the district court determined that Bloomingdales had not "initiate[d] contact with the forum state." Id. at *2. Because "the complaint fails to identify a 'demonstrable nexus' between the plaintiff's claims and Bloomingdale's contacts with Massachusetts," the district court determined that there was no basis for specific jurisdiction over Bloomingdales. Id. at *3.

This timely appeal followed.

**II**

It is well-settled that the burden of proving that personal jurisdiction may be exercised in the forum state rests with the party seeking to invoke that jurisdiction. See Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 121 (1st Cir. 2022). Because the jurisdictional determination in this case was made at the inception of the litigation — without the benefit of either pretrial discovery or an evidentiary hearing — the classic prima facie approach applies. See Foster-Miller, Inc. v. Babcock

& Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995); Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992).

We review the district court's order of dismissal for lack of specific personal jurisdiction based on the prima facie record de novo. See Baskin-Robbins, 825 F.3d at 34. In conducting this tamisage, we are not bound by the district court's reasoning but, rather, remain free to uphold the judgment on any rationale made manifest by the record. See id.

Under the prima facie approach, "an inquiring court must ask whether the plaintiff has 'proffer[ed] evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction.'" Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020) (alteration in original) (quoting Baskin-Robbins, 825 F.3d at 34). To establish such a showing, the plaintiff must "go beyond the pleadings and make affirmative proof." United Elec. Radio & Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993) (quoting Boit, 967 F.2d at 675); see United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001). We mine the relevant facts from "the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." Baskin-Robbins, 825 F.3d at 34. We do not, however, "credit conclusory allegations or draw farfetched

inferences." Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).

Because we are sitting in diversity jurisdiction, see 28 U.S.C. § 1332(d), we act as "the functional equivalent of a state court sitting in the forum state." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009) (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 24 (1st Cir. 2005)). In that posture, the plaintiff must show that our exercise of jurisdiction over Bloomingdales satisfies both the strictures of the Due Process Clause, see U.S. Const. amend. XIV, § 1, and the requirements of the Massachusetts long-arm statute, see Mass. Gen. Laws ch. 223A, § 3. Although the reach of the Massachusetts long-arm statute may not be identical to the reach of the Due Process Clause, see Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016), we do not need to inquire into any such distinctions here: the plaintiff's attempted assertion of jurisdiction over Bloomingdales does not satisfy the constitutional minimum demanded by the Due Process Clause, see A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 59 (1st Cir. 2016).

The Due Process Clause insists that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457,

463 (1940)). This test "is flexible and fact-specific, 'written more in shades of grey than in black and white.'" Baskin-Robbins, 825 F.3d at 35 (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)).

A court may exercise in personam jurisdiction over an out-of-state defendant "by virtue of either general or specific jurisdiction." Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). A state holds general jurisdiction over a defendant when the defendant maintains contacts that are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quoting Int'l Shoe, 326 U.S. at 317). Bloomingdales operates stores in Massachusetts, but — given that the plaintiff has not pursued a claim of general jurisdiction regarding Bloomingdales — any claim of jurisdiction based on the operation of these stores has been waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). The plaintiff's case thus stands or falls on whether the defendant's use of SRC, in the manner chosen by Bloomingdales, can support a claim of specific jurisdiction. We turn, then, to that inquiry.

To establish that a court has specific jurisdiction over a defendant, a litigant must satisfy three criteria. "First, the plaintiff's claim must directly arise from or relate to the

defendant's activities in the forum." Chen, 956 F.3d at 59. "Second, the defendant's forum-state contacts must 'represent a purposeful availment of the privilege of conducting activities in that state.'" Id. (quoting Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018)). "Third, the exercise of specific jurisdiction in the forum must be reasonable under the circumstances." Id. All three criteria must be satisfied to establish specific jurisdiction over a particular defendant in a particular state. See id.

**III**

On appeal, the plaintiff argues that the district court erred in both its relatedness and purposeful availment analyses. Given that "[i]n website cases, we have recognized that the 'purposeful availment' element often proves dispositive," Motus, 23 F.4th at 124, we begin — and end — our examination at that point.

Under the purposeful availment requirement, "there must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 32 (1st Cir. 2010) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Here, that act must relate to the insertion of SRC into Bloomingdales' website. This purposeful availment inquiry "focus[es] on the

defendant's intentionality" and rests on two cornerstones: "voluntariness" and "foreseeability." A Corp., 812 F.3d at 60. "Achieving voluntariness demands that the defendant's contacts with the forum result proximately from its own actions." Chen, 956 F.3d at 59. Achieving foreseeability, meanwhile, demands that "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." Id. (alteration in original) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).

In cases in which a defendant's website is the primary forum contact, we have noted that there may be "'plus' factors evincing a corporate defendant's deliberate attempt to serve the forum state, that is, factors indicating something over and above the defendant's mere awareness that its products were entering a given market in the stream of commerce." Motus, 23 F.4th at 124-25 (quoting Chen, 956 F.3d at 59-60). Here, however, we need not concern ourselves with determining whether the plaintiff has established the presence of such plus factors. The plain truth is that he has not adduced facts concerning Bloomingdales' use of SRC sufficient to satisfy the voluntariness and foreseeability requirements.

According to the plaintiff, Bloomingdales' conduct fulfilled the voluntariness and foreseeability requirements of the purposeful availment test because the defendant "cultivated a

market in Massachusetts, sought to expand that market through the use of SRC, and benefited from that market." Thus, the plaintiff says, our statements in Plixer International, Inc. v. Scrutinizer GmbH, 905 F.3d 1 (1st Cir. 2018), and Knox v. MetalForming, Inc., 914 F.3d 685 (1st Cir. 2019), make it apparent that he has sufficiently pleaded that Bloomingdales' conduct satisfies the voluntariness and foreseeability requirements. We do not agree.

Plixer is simply inapposite. The sole issue there, which centered on a German company's purported trademark infringement, was fundamentally different from that in question here. The Plixer court asked whether the exercise of specific personal jurisdiction over the foreign defendant in the United States violated the Due Process Clause under Federal Rule of Civil Procedure 4(k)(2). See 905 F.3d at 6. Inasmuch as the crux of that analysis — which requires a showing that a defendant is not subject to the personal jurisdiction of any state court of general jurisdiction for purposes of Rule 4(k)(2) — is not at issue here, we decline the plaintiff's invitation to treat Plixer as the guiding precedent for purposes of this case.

Knox, too, offers the plaintiff insufficient support. There, we held that it was foreseeable that a German manufacturer would be haled into a Massachusetts court for a product-liability lawsuit that arose out of an injury caused by one of its custom-made machines. See Knox, 914 F.3d at 693. Yet, as we emphasized,

that holding "rest[ed] . . . on the totality of [the defendant's] activities, voluntarily undertaken, that connect[ed] [it] to Massachusetts." Id. at 692. These connections included a sixteen-year-long relationship between the defendant and various Massachusetts-based customers, the defendant's practice of individually approving and manufacturing machines according to the in-state customers' specifications, and its maintenance of direct connections with the customers when it came to purchasing replacement parts and obtaining assistance with troubleshooting and repairs. See id. at 692-93. It was the combination of these factors — all of which had been adequately pleaded — that steered us to our conclusion.

The facts pleaded in the case at hand lead to a different outcome. Whereas the record in Knox clearly established that the defendant knowingly and voluntarily produced, offered, and sold maintenance services to in-state customers, the complaint in this case merely alleges that Bloomingdales commissioned SRPs to deploy SRC in a manner that would be recognized by the internet browsers of users located anywhere in the world (including Massachusetts). Even though we credit these allegations, they do not establish that the totality of Bloomingdales' voluntary activities connecting it to Massachusetts rose to a level comparable to that undertaken by the defendant in Knox. In turn, we hold that these alleged contacts fail to demonstrate that Bloomingdales maintained

sufficient linkages with Massachusetts to support a claim of specific jurisdiction.

Our decision in Chen, 956 F.3d 45, is much more instructive. In Chen, we considered whether we had in personam jurisdiction over an Alabama-based online educational provider that was sued by a Massachusetts-based graduate student. See id. at 59-62. We held that, although the defendant maintained an interactive online learning platform that was accessible (and allegedly accessed by the plaintiff) in Massachusetts, personal jurisdiction was lacking. See id. at 60-61. Crucial to our determination was the plaintiff's "fail[ure] to show that [the defendant] deliberately used its online learning platform (or any other component of its online presence) to target him while he was in Massachusetts." Id. at 61.

So, too, the plaintiff here has failed to provide "affirmative proof," Swiss Am. Bank, 274 F.3d at 619, that Bloomingdales purposefully deployed SRC to intentionally target users in Massachusetts. Although the allegations and evidence that the plaintiff does provide do show that Bloomingdales intentionally targeted the plaintiff when he happened to be in Massachusetts, they do not affirmatively prove that Bloomingdales knew that it was targeting him in Massachusetts. See Motus, 23 F.4th at 126 (explaining that, in cases involving websites, foreseeability requires that defendant know "of both the existence

of a potential victim and the victim's likely whereabouts"). That is, the plaintiff does not plead how Bloomingdales knew that it was intentionally operating its website — and the accompanying SRC — in Massachusetts.[1]

This holds true even with respect to the plaintiff's allegations that, "[a]t all relevant times, Defendant knew that its practices would directly result in collection of information from Massachusetts citizens while those citizens browsed" its website. After all, the plaintiff admits that "[b]oth desktop and mobile versions of Bloomingdale's website allow a user to search for nearby stores by providing the user's location." Even assuming that this feature does in fact inform Bloomingdales about the location of a given user,[2] there is not a shred of evidence in the present record that the plaintiff himself entered his location

---

[1] The fact that Bloomingdales presumably knew that its website was being accessed by users located in Massachusetts given that it operated a nationally available website is beside the point. What is crucially lacking here is that Bloomingdales had the specific knowledge and intent that it was operating its website and its SRC on the plaintiff's Massachusetts-based browser when it allegedly gave rise to the injuries in the complaint. See Plixer Int'l, 905 F.3d at 8 ("[A] website operator does not necessarily purposefully avail itself of the benefits and protections of every state in which its website is accessible.").

[2] The plaintiff does not consider the obvious fact that there is nothing stopping a user located outside of Massachusetts from entering a location within the state on Bloomingdales' website. It follows, therefore, that this feature on Bloomingdales' website does not necessarily serve to inform the defendant of users' actual locations.

into the website when he accessed it. This silence is unsurprising: after all, the plaintiff also fails to allege that he visited any of Bloomingdales' stores in the state, which would explain why he never searched for nearby stores. More importantly, this insufficiency bolsters our conclusion that the plaintiff has not proffered the requisite evidence to establish that Bloomingdales knew that it was targeting him when he was in Massachusetts, thus fulfilling the voluntariness and foreseeability requirements. We therefore conclude that, on the record before us, the plaintiff has not sufficiently established that Bloomingdales purposefully availed itself of what Massachusetts has to offer.[3]

**IV**

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed**.

**—Concurring Dubitante Opinion Follows—**

[3] In light of this holding, we do not reach the parties' numerous other — and, arguably, thornier — arguments regarding either the contours of the relatedness prong of the specific personal jurisdiction inquiry or the scope of the Massachusetts Wiretapping Act and the Massachusetts Invasion of Privacy Statute.

**THOMPSON, Circuit Judge, concurring *dubitante*.** Given the Supreme Court and First Circuit cases spotlighted above, I cannot confidently say that we are wrong to rule that plaintiff fell short on the purposeful-availment element of specific personal jurisdiction.[4] But I am worried about where the law is in this area and where it might go (keeping in mind all the privacy-invading tech already out there, with more surely to come). And so I chose this unusual but not unheard-of form (concurring *dubitante*) to express my concerns.

I'll start with something everyone can agree on. Personal jurisdiction is — as Winston Churchill said of the Soviet Union — "a riddle wrapped in a mystery inside an enigma." Donatelli v. Nat'l Hockey League, 893 F.2d 459, 462 (1st Cir. 1990). And we felt that way *long* before things like the internet and online shopping really exploded.

A mishmash "of *nineteenth-century* natural justice and natural rights, early *twentieth-century* substantive due process, and general law," personal jurisdiction often turns on the non-resident defendants' "contacts" with a particular state and whether those contacts show the defendants "purposefully avail[ed]" themselves of the privilege of acting there. See Jay

[4] As the lead opinion notes, there are two kinds of personal jurisdiction — general and specific. See Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). And like the lead opinion, my focus is on the second kind.

Conison, *What Does Due Process Have to Do with Jurisdiction?*, 46 Rutgers L. Rev. 1071, 1209 (1994) (first quote, with emphases added); Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (second quote); Hanson v. Denckla, 357 U.S. 235, 253 (1958) (third quote).[5] The contacts cannot be so "random, isolated, or fortuitous" that defending a lawsuit in that forum would insult due process. See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2019) (quoting Keeton v. Hustler Mag., Inc., 465 U.S. 770, 774 (1984)). Instead those contacts "must show that the defendant[s] deliberately 'reached out beyond' [their] home," say by "'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." Id. (third alteration in original) (quoting Walden v. Fiore, 571 U.S. 277, 285 (2014)).

An underlying concept of personal-jurisdiction law is that territorial borders matter. But the internet transcends *all* borders (state and national), with practically anyone able to view a website from practically anywhere. See, e.g., Dig. Equip. Corp. v. AltaVista Tech., Inc., 960 F. Supp. 456, 462 (D. Mass. 1997) (Gertner, J.) (noting — commonsensically — that "[t]he Internet has no territorial boundaries," and "paraphras[ing]" — brilliantly — "Gertrude Stein" to make the point that, "as far as the Internet

[5] FYI, my citing to some parts of a law review article does not necessarily amount to an endorsement of every other part of the article.

is concerned, not only is there perhaps 'no there there,' the 'there' is *everywhere* where there is Internet access"). And these days "the prevalence of internet interactions makes it harder and less meaningful to tell *who is reaching out to whom*." John Leubsdorf, *Against Personal Jurisdiction Law*, 72 DePaul L. Rev. 65, 69 (2022) (emphasis added).

I get the need to draw lines so operators of websites and digital platforms (I'm no techie, but you see where I'm going) aren't unfairly exposed to personal jurisdiction everywhere. But I worry that the Bloomingdaleses of the world will be able to launch online platforms accessible in all fifty states yet still be held not to have sufficient contacts in any of them to trigger personal jurisdiction (remember I'm talking about *specific* personal jurisdiction).[6] The personal-jurisdiction requirement — which already "favors defendants" — should not be so easy "to manipulate and evade." See id. at 65.

Perhaps the Supreme Court will step in with more guidance (there are plenty of test cases making their way through the system). Or perhaps Congress will act. See, e.g., id. at 80-81 (discussing what Congress can do); Stephen E. Sachs, *How Congress Should Fix Personal Jurisdiction*, 108 Nw. U. L. Rev. 1301, 1302-

[6] Note that I haven't even mentioned artificial intelligence and bots!

04 (2014) (ditto, and also including a draft bill). But for now our hands appear tied.